**CERTAIN UNDERWRITERS AT LLOYD'S, et al., Plaintiff,**

v.

**BRISTOL–MYERS SQUIBB CO. and Medical Engineering Corp. et al., Defendants.**

No. 1:99–CV–026.

United States District Court, E.D. Texas, Beaumont Division.

June 3, 1999.

Gordon R. Pate, Pate & Dodson, Beaumont, Texas, Scott G. Burdine, Franklin, Cardwell & Jones, Houston, TX, Michael G. Merlo, Matthew T. Walsh, Gregory D. Hopp, Blatt Hammesfahr & Eaton, Chicago, IL, for plaintiff.

Robert Quentin Keith, Amy Keith, Keith & Weber, Johnson City, TX, Andrew T. Berry, Thomas W. Ladd, Arnold L. Natali, Jr., McCarter & English, Newark, NJ, for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

In June of 1991, Bristol–Myers Squibb contracted with Certain Underwriters at Lloyd's, London and other British and European insurance companies (hereinafter BES) for comprehensive liability insurance including products liability coverage. BES, after being sued (along with over 100 other insurers) by Bristol–Myers for failure to indemnify (see *Bristol–Myers Squibb Company, et al. v. AIU Insurance Company, et al.,* Cause No. A–0145672, 58th District Court in Jefferson County, Texas), attempted in 1994 to rescind the contract and commence arbitration. BES could have removed the case to federal court to enforce arbitration at that time. It chose not to. In response, Bristol–Myers sought and was granted a declara-

tory judgment and injunctive relief enjoining arbitration in *Bristol–Myers v. AIU*. *(See* Notice of Removal, Exhibit B, Supplemental Petition for Declaratory Judgment and Exhibit A, Order Granting Temporary Injunction, Dec. 16, 1994).

BES, following the injunction in *AIU*, did not appeal, seek interlocutory review of that injunction nor attempt to remove this cause to federal court. BES could have removed at that time. It chose not to do so. Instead it filed a joint motion to sever and to be realigned as plaintiffs (motion granted November 15, 1996). After the severance and realignment were granted, BES filed an original petition against Bristol–Myers alleging fraud in the inducement and breach of contract. BES then filed an amended petition adding violations of New York Insurance Law § 3105 and material misrepresentations, both of which, according to BES, warranted rescission.

On August 1, 1997, the 58th District Court ordered that all claims (including those by BES as plaintiffs and Bristol–Myers as counter-claimants) would be tried together. BES subsequently filed a motion to compel arbitration in the trial court, and a petition for writ of mandamus to the Ninth District Court of Appeals of Texas, both of which failed. BES could have removed the case to federal court at that time. It chose not to. On August 27, 1997, the 58th District Court amended its ruling and ordered the case to be tried in a "trifurcated" proceeding. The rescission claim brought by BES would be tried first, followed by the contract claim and then the fraud claims brought by both parties. BES could have removed at that time. It chose not to do so.

The trial on the rescission claim began on November 30, 1998. On December 17, 1998, a jury returned a verdict in favor of Bristol–Myers, rejecting BES's claims that Bristol–Myers engaged in misrepresentation. Following the verdict on the first trial, the court scheduled the second phase of the trial to begin March 29, 1999.

Shortly after that order was entered, on January 19, 1999, BES filed a Motion to Compel Arbitration of Contract Issues and to Dissolve the Court's Anti-arbitration Injunction, which it had denied previously. One day later, on January 20, 1999, BES removed the case to this court seeking enforcement of the Arbitration clause in the insurance contracts.

## ANALYSIS

This case involves a mandatory arbitration clause in a contract between a domestic and foreign entity, and thus falls under the purview of Title 9 U.S.C. § 205. Congress enacted Title 9 U.S.C. § 205 in 1970 as part of an amendment to the Federal Arbitration Act implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See* PubL. No. 91–368, § 1, 84 Stat. 692 (1970), *codified at* 9 U.S.C. § 205 (1988) (hereinafter Section 205). The goal of Section 205 was to provide more liberal removal standards for cases dealing with arbitration agreements made pursuant to the Convention. Like 28 U.S.C. § 1441 (the standard removal provision), Section 205 states that only defendants may remove to federal courts. Section 205 also requires that an action be removed at any time *prior to trial.*

Several issues exist concerning whether BES has satisfied the requirements of Section 205. First, it is not clear that BES was a defendant when it finally removed the case after more than four years of proceedings in the state court. Second, it is apparent that BES did not remove prior to trial. Third, it is possible that BES has waived its removal rights because it significantly invoked the processes of the state courts and had ample opportunities to remove before 1999, but chose not to do so.

In 1996 BES, then a defendant in *Bristol–Myers v. AIU* sought to be severed and to be realigned as a plaintiff. Nominally, this ended BES's status as a defendant and transformed it into a plaintiff,

thereby denying it the right to remove pursuant to Section 205. BES claims, however, it was still a defendant entitled to enforce the arbitration clause despite the fact it was a plaintiff and was performing all the functions of one.

█ Federal law governs the question of which party is a plaintiff or a defendant for purposes of removal. *Chicago, R.I. & P.R. Co. v. Stude,* 346 U.S. 574, 580, 74 S.Ct. 290, 98 L.Ed. 317 (1954). The right of removal is limited to the defendant because it did not choose the forum. *Scott v. Communications Services, Inc.,* 762 F.Supp. 147, 150 (S.D.Tex.1991), *aff'd,* 961 F.2d 1571 (5th Cir.1992). In certain cases, a federal court might determine that a party designated as the plaintiff is, for purposes of removal, in fact a defendant. *Mason City & Fort Dodge Railroad Co. v. Boynton,* 204 U.S. 570, 579, 27 S.Ct. 321, 51 L.Ed. 629. Criteria influencing the determination of a party's status as a plaintiff are whether or not the party's claims constitute the "mainspring of the proceedings" and whether the "continuance of the proceedings depend upon its will." *Mason City,* 204 U.S. at 580, 27 S.Ct. 321.

█ Cases addressing the identity of defendants in terms of arbitration related matters generally hold that the plaintiff, for the purposes of removal, is the party which initiates judicial intervention and not the party which initiated arbitration. *See Sears Roebuck & Co. v. Glenwal Co.,* 325 F.Supp. 86,88 (S.D.N.Y.1970) and *In re Victorias Milling Co. v. Hugo Neu Corporation,* 196 F.Supp. 64 (S.D.N.Y.1961). BES claims that Bristol–Myers, in filing its case, initiated judicial intervention. However, although BES claims that "litigating in Texas court was entirely the choice of Bristol–Myers," BES could, if it had so chosen, severed, remained a defendant, and subsequently removed. (See The BES Insurers Response Memorandum in Opposition to Bristol–Myers' Motion for Remand, p. 4). Instead, it chose to realign itself as a plaintiff, invoke the jurisdiction of the state court and pursue

the case until it suffered its fast defeat in trial. In a sense, and at least in the posture of the present case, BES's decision to realign itself as a plaintiff was the mainspring of the present action. Therefore, it is not clear that BES is the defendant in either nominal or real terms.

█ Adding to the murky status of BES as the defendant or plaintiff, it is undisputed that BES failed to remove its case prior to trial. According to Section 205:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time *before the trial thereof,* remove such action or proceeding to the district court.

9 U.S.C. § 205. According to this section, a defendant may remove at any time before the trial of subject matter relating to an arbitration agreement subject to the Convention. In this case, the subject matter of the first of the three trials was misrepresentation. The misrepresentation in question related directly to the arbitration agreement. BES itself conceded this when, in 1994, it attempted to arbitrate the misrepresentation issue (See The BES Insurers Response Memorandum in Opposition to Bristol–Myers' Motion for Remand, p. 1). Consequently, removal following the first phase of the "trifurcated" proceeding was inappropriate.

To uphold the right of BES to remove after the first trial would be essentially to give it two bites at the same five year old apple. It enjoyed the fruits of extensive discovery in preparation for all three parts of its case and also witnessed the failure of the first phase of the controversy. Although Section 205 may have been enacted to facilitate removal of cases coming under the Convention, it certainly was not designed to enable parties to invoke the jurisdiction of the state court and willingly proceed with discovery and trial only to remove when the first bite of what appears

to be a ripe apple turns out in fact to be extremely sour.

■ The length of time which BES waited before it removed and the extent of discovery which it enjoyed, both raise the third issue facing the motion to remand, namely whether BES did not in fact waive its right to remove. The 5th Circuit has stated that "[e]ven a defendant who petitions timely may have waived its right to removal by proceeding to defend the action in state court or otherwise invoking the processes of the court." *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986). Not only did BES pursue its action in state court in the first trial, but it filed answers, motions and petitions, successfully sought to sever and be realigned as plaintiff, enjoyed extensive discovery [1] and otherwise invoked the processes of the court. As the 5th Circuit stated in Demco, "[t]o permit the defendants in this case to obtain removal after they have tested state-court waters for four years would give them a second opportunity to forumshop and further delay the progress of the suit." *Demco*, 792 F.2d at 482.

This court ruled that a party who had significantly invoked the processes of state court had waived their right to removal in *Zbranek v. Hofheinz*, 727 F.Supp. 324 (E.D.Tex.1989). There, as here, the removing party had actively invoked the state court's jurisdiction prior to seeking removal, *Zbranek*, 727 F.Supp. at 325. What was stated then is applicable now:

a federal court is bound to consider the stage of the state court litigation in ruling on a motion to remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). The state court litigation here has advanced considerably ... it would be a waste of judicial resources to now force all these parties into federal court, to repeat their already extensive motion practice. *See*

*Boland v. Bank Sepah–Iran*, 614 F.Supp. 1166 (S.D.N.Y.1985).
*Zbranek*, 727 F.Supp. at 326.

BES had ample time and many valid and solid opportunities to remove this case prior to the trial of the state court case. Instead, it sought to continue with discovery, prepare for trial and actually proceed to trial. To allow it to remove now would be to allow it to invoke the processes of the state court in very significant matters, disavow the results in state court and then change the forum. This is contrary to the rulings in both *Zbranek* and *Demco*.

■ Due to the extensive degree of discovery which it has enjoyed, BES not only waived its right to remove, but, it may well have waived its right to arbitrate. In *Miller Brewing Co. v. Fort Worth Distributing Co.*, 781 F.2d 494, 498 (5th Cir.1986), the 5th Circuit held that:

[a] party to arbitration does not have a right to the pre-trial discovery procedures that are used in a case at law. A party 'may not invoke arbitration and yet seek pro-trial discovery going to the merits ... [A]ny attempt to go to the merits and to retain still the right to arbitration is clearly impermissible.' *Graig Shipping Co. v. Midland Overseas Shipping Corp.*, 259 F.Supp. 929, 931 (S.D.N.Y.1966).

*Miller Brewing*, 781 F.2d at 498. Although determining what constitutes a waiver of arbitration is unique to each case (*See Tenneco Resins, Inc. v. Davy Intern., AG*, 770 F.2d 416 (5th Cir.1985) *citing Burton–Dixie Corp. v. Timothy McCarthy Construction Co., Inc.*, 436 F.2d 405, 406 (5th Cir.1971)) and the burden on the party seeking to show that arbitration has been waived is heavy (*See Tenneco*, 770 F.2d at 420 *citing Sibley v. Tandy Corp.*, 543 F.2d 540, 542 (5th Cir.1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977) and is particularly heavy where the party at risk of having waived its

---

1. Apparently, over 2 dozen depositions were taken according to the written notations on the partial docket sheet furnished by BES in its removal papers.

rights requested arbitration, as BES did here, (*See Tenneco,* 770 F.2d at 420, *citing Southwest Industrial Import and Export, Inc. v. Wilmod Co., Inc.,* 524 F.2d 468, 470 (5th Cir.1975), nevertheless, "if the party seeking arbitration had taken unfair advantage of the discovery proceedings which would not have been available in arbitration," and if this prejudiced the other party, then waiver can be found. *Psarianos v. Standard Marine, Ltd., Inc.* 728 F.Supp. 438 (E.D.Tex.1989).

There is ample evidence that BES took unfair advantage of discovery proceedings which would not have been available to it in arbitration [2] and, in doing so, it prejudiced Bristol–Myers. For over four years, for example, BES has enjoyed extensive discovery under Texas procedural law on all of its claims, not just misrepresentation. It has been provided with scores of documents as well as the depositions of expert witnesses on the contract issues, and not simply the misrepresentation issues. The existence of this discovery will seriously hinder Bristol–Myers in arbitration.

BES conducted extensive discovery itself, and the state trial court appointed a special master to hear and report on any discovery issues. This special master made recommendations as to discovery disputes which were entangled in all the issues in the case, whether misrepresentation, contract, declaratory judgment or rescission. The total taxable costs incurred for this special master exceeded one hundred eighty-two thousand dollars.

Not only is the discovery presented in the record extensive, but it is not clear whether it reveals all of the discovery that may have occurred. On January 18, 1996, an order was issued by the state court designating *Bristol–Myers v. AIU* as a pilot electronic filing system case under Local Rule 7. This court has so far not been provided with information regarding documents that may have been electronically filed. It is therefore unknown whether more discovery was undertaken and filed electronically. BES has not brought forward all docket entries, although the court suggested that it could do so, if it desired.

The 5th Circuit's holding in *McDermott International, Inc., v. Lloyds Underwriters of London,* 944 F.2d 1199 (5th Cir. 1991) does not challenge the assertion that a party who unfairly takes advantage of discovery implicitly waives its arbitration rights. Unlike the case at hand, *McDermott* confronted the issue of whether parties could contractually waive their arbitration rights. The only relevance of *McDermott* to this case is its holding regarding appellate review of motions to remand, authorizing such review in cases like this one where remand is not brought under 28 U.S.C. § 1447(c).

For the above stated reasons, and primarily because BES failed to remove prior to trial, initiated the processes of the courts and unfairly took advantage of discovery, thereby prejudicing Bristol–Myers and waiving its rights to both removal under Section 205 and arbitration, Bristol–Myers' motion to remand will be GRANTED. An appropriate order will be entered by the court

---

**2.** *See* Affidavit of the Rt. Hon. Sir Michael Kerr covering rules of disclosure in arbitration proceedings held in England. According to Kerr, "in an arbitration of the kind contemplated in this case, the likelihood is that the tribunal would seek to limit the disclosure of documents." p. 7. *See also* Exhibits 3, 4, 9, and 12 accompanying Kerr's affidavit.