**In re CERTAIN UNDERWRITERS AT LLOYD'S, et al.**

No. 09–99–430 CV.

Court of Appeals of Texas, Beaumont.

Submitted Nov. 4, 1999.

Decided May 18, 2000.

Gordon R. Pate, Pate & Dodson, Beaumont, Scott G. Burdine, Franklin, Cardwell & Jones, Houston, Gregory D. Hopp, Matthew T. Walsh, Jennifer L. Barron, Blatt, Hammesfahr & Eaton, Chicago, IL, for appellant.

Robert Q. Keith, Keith & Weber, Johnson City, Andrew T. Berry, Thomas W. Ladd, McCarter & English, Newark, NJ, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

EARL B. STOVER, Justice.

In this original proceeding, Relators —— Certain Underwriters at Lloyd's, London, and other British and European insurance companies (collectively referred to as BES)—seek a writ of mandamus from the Ninth Court of Appeals ordering the Honorable James Mehaffy, presiding judge of the 58th District Court of Jefferson County, Texas, to enter an order compelling arbitration. The BES insurers are plaintiffs in an action against Bristol–Myers Squibb Co., Inc. and Medical Engineering Corp., the real parties in interest (collectively referred to as "BMS"). The underlying suit arose from a contract BES entered into with BMS in 1991 to provide BMS with comprehensive general liability insurance.

In 1994, BES attempted to rescind the insurance contract on the grounds that BMS had made misrepresentations in the policy application and had failed to disclose the existence of prior claims on breast implants. In response, BMS sued BES in a declaratory judgment action seeking a declaration that it (BMS) did not engage in misrepresentation and fraud regarding the policy. BMS also sought indemnification under the policy and damages for breach of the duty of good faith and fair dealing. Significantly, one of the provisions of the insurance contract was a mandatory arbitration clause that was invoked by BES at the beginning of the controversy and on two subsequent occasions during the litigation. After the trial court denied BES's third motion to compel arbitration, BES filed its second petition for writ of mandamus presently before this Court.

■ We initially consider BMS's contention that BES's arbitration claim is precluded by the holding of another court. BMS directs us to the decision of the United States District Court, Eastern District of Texas, which, in granting BMS's remand motion, held the following:

For the above stated reasons, and primarily because BES failed to remove prior to trial, initiated the processes of the courts and unfairly took advantage of discovery, thereby prejudicing Bristol–Meyers and waiving its rights to both removal under Section 205 and arbitration, Bristol–Meyers' motion to remand will be GRANTED.

*Certain Underwriters at Lloyd's v. Bristol–Myers Squibb Co.,* 51 F.Supp.2d 756, 761 (E.D.Tex.1999). According to BMS, the language in the opinion and the holding of the court operate as a bar to BES's arbitration claim by virtue of the law of the case doctrine, collateral estoppel, and comity. In contrast, BES maintains the doctrines do not apply and it has not waived its right to arbitrate under the contract.

BES first points out that the issue actually before the federal district court was removal/remand and not waiver of arbitration. In January 1999, BES had removed the case to federal court under 9 U.S.C. § 205 (1999), which is part of the "Federal Arbitration Act implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards." *See Certain Underwriters at Lloyd's,* 51 F.Supp.2d at 758. Section 205 mandates that only a *defendant* may remove a case to federal court and that an action must be removed *prior to trial. See* 9 U.S.C. § 205 (1999). After BES removed the case to federal court, BMS sought to remand it back to state court on the grounds that (1)BES was a plaintiff, as opposed to a defendant, (2)the trial had already commenced before BES filed its motion to arbitrate, and (3)BES waive any rights to arbitrate under 9 U.S.C. § 205.

The federal district court's opinion first indicated that it was unclear BES satisfied the first prong of section 205 — namely the requirement that BES be a defendant in the case —— since BES, by virtue of a joint motion of the parties, had been realigned as a plaintiff in state court. *Certain Underwriters at Lloyd's,* 51 F.Supp.2d at 758–59. As to section 205's second requirement, the court found it was undisputed that BES failed to remove the case *prior* to trial. *Id.* at 759. The opinion also concluded that BES had waived any right of removal of the case to federal court, because it had significantly invoked

the processes of state court through extensive participation in discovery. *Id.* at 759. In addition to the findings on the removal/remand question, the opinion also discussed the waiver of arbitration issue and ultimately granted the remand motion primarily because, as noted above, "BES failed to remove prior to trial, initiated the processes of the courts and unfairly took advantage of discovery, thereby prejudicing Bristol–Myers and *waiving its rights to both removal under Section 205 and arbitration . . . ." Id.* at 761 (emphasis added).

Having found that BES failed to satisfy at least one of the specific statutory requirements of 9 U.S.C. § 205, the trial judge granted BMS's motion to remand. A review of the opinion reveals the issue of waiver of arbitration was not essential to the order of remand; therefore, we conclude the federal court's holding regarding it constituted dicta. Dictum is an observation or remark made concerning some rule, principle, or application of law suggested in a particular case that is not necessary to the determination of the case. *See Edwards v. Kaye,* 9 S.W.3d 310, 314 (Tex. App.-Houston [14th Dist.] 1999, pet. filed); *see also Maxwell Lumber Co. v. Merle Greer Co.,* 501 S.W.2d 454, 456–57 (Tex. Civ.App.-Tyler 1973, no writ). Under the principle of *stare decisis,* dictum is not binding as a precedent. *See Edwards* at 314. Nor do we believe that dictum falls within the law of the case doctrine. *See Huckabay v. Irving Hosp. Auth.,* 879 S.W.2d 64, 67 n. 1 (Tex.App.-Dallas 1993, writ dismissed). Here, because the finding of waiver of arbitration was not necessary to the determination of the remand issue, we conclude it has no binding effect on the state court. Consequently, the opinion of the United States District Court has no preclusive effect, under the doctrines of law of the case, collateral estoppel, or comity, on the waiver of arbitration issue.

We now turn to the petition for writ of mandamus in which BES presents four issues for review.

- Is the mandamus petition ripe and necessary?
- Does the Federal Arbitration Act govern?
- Must Texas courts enforce the Federal Arbitration Act?
- Did the BES insurers waive their right to arbitration?

As explained herein, we conclude the mandamus is ripe, the Federal Arbitration Act ("FAA") governs, and Texas courts must enforce the FAA. We also hold that BES did not waive its right to arbitration.

■ Initially, we address BMS's contention that the mandamus should be denied on the ground that BES has an adequate remedy by appeal, and, therefore, mandamus is not an available remedy. BMS is incorrect; the mandamus petition, as BES asserts, is "ripe and necessary." Here, BES filed its motion to arbitrate under the purview of the Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See* 9 U.S.C. §§ 1–16, 201–208 (1999). According to the Texas Supreme Court, "There is no adequate remedy by appeal [under the Federal Arbitration Act] for denial of the right to arbitrate, because the very purpose of arbitration is to avoid the time and expense of a trial and appeal." *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex.1998). Therefore, we conclude BES has no adequate remedy by appeal. The issue before us —— whether the trial court abused its discretion in denying BES's motion to compel arbitration —— is now ripe.

■ The Texas Supreme Court has addressed the standard of review for a mandamus:

This Court will grant mandamus when a trial court has clearly abused its discretion and the relator has no adequate remedy by appeal. *See Walker v. Pack-*

*er,* 827 S.W.2d 833, 839–40 (Tex.1992). An error in determining what the law is or applying the law to the facts constitutes an abuse of discretion. *See id.* at 840.

*In re Bruce Terminix Co.*, 988 S.W.2d at 703.

A reviewing court [in a mandamus proceeding] may not disturb the trial court's resolution of factual issues, even if the reviewing court would have decided differently, unless the resolution is shown to be arbitrary and unreasonable. [*Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992).] A trial court's resolution of a factual issue is arbitrary and unreasonable if the relator establishes that the trial court could reasonably have reached only one decision. *Id.* at 840. However, "[a] trial court has no 'discretion' in determining what the law is or applying the law to facts." *Id.* Failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

*In re Weekley Homes,* 985 S.W.2d 111, 113 (Tex.App.-San Antonio 1998, orig. proceeding). We, therefore, will determine in this mandamus review whether the trial court abused its discretion in denying BES's motion to compel arbitration.

■ In its second issue, BES contends that the Federal Arbitration Act ("FAA") governs the contract. No one disputes that the arbitration clause in the contract falls under the FAA. BES also contends the issue of waiver of arbitration is a mere procedural question or simply an issue relating to conditions precedent that the trial court is not authorized to determine. We do not agree. The issue of waiver of arbitration is one that is consistently addressed by Texas and federal courts and not reserved for an arbitrator. *See generally In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571 (Tex.1999); *In re Bruce Terminix Co.,* 988 S.W.2d 702 (Tex.1998);

*see also S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2 nd Cir. 1998).

The remaining issue, then, and the one on which the case turns, is whether BES waived its right to arbitration under the contract. BMS points to Judge Mehaffy's written denial of BES's third motion to compel arbitration and to the hearing on August 20, 1999, when Judge Mehaffy, in denying the arbitration motion, found that BES waived its arbitration rights under the contract:

> The Court believes that a waiver did occur based upon the independent evidence before us and finds that the BES Insurers did waive their right to proceed to arbitration by conducting discovery, by participating in the recision [sic] trial, and by suffering the passage of time.

According to BMS, BES "waived its right to arbitration by an extended and extensive invocation of the state court judicial machinery." Specifically, BMS maintains that BES became an active aggressor in the case —— as a plaintiff on both a breach of contract claim and a declaratory judgment action, as well as an active participant in discovery on all issues between the parties —— and in so doing, took a position inconsistent with the arbitration request. As a result, urges BMS, the insurance companies have waived their arbitration claim.

 Arbitration of disputes is strongly favored in both federal and state law, and a strong presumption exists against the waiver of a contractual right to arbitration. *In re Bruce Terminix Co.*, 988 S.W.2d at 704. The presumption applies in construing agreements to arbitrate whether the issue is one of delay, waiver, or a similar defense to arbitration. *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex.1996). A "heavy burden of proof" is required to establish waiver of arbitration rights, and the court must resolve all doubt in favor of arbitration. *In re Bruce Terminix Co.*, 988 S.W.2d at 702. In addition, waiver of an arbitration right must be intentional. *EZ Pawn Corp.*, 934 S.W.2d at 89.

> Implying waiver from a party's actions is appropriate only if the facts demonstrate that the party seeking to enforce arbitration intended to waive its arbitration right. Waiver in cases where litigation has begun will be found only when the party seeking to enforce the agreement substantially invokes the judicial process to the other party's detriment ... Consequently, to defeat arbitration here, [the real party in interest] had to show that EZ Pawn acted inconsistently with the agreement and that EZ Pawn's conduct prejudiced him.

*Id.* The burden of showing BES's waiver of arbitration falls upon BMS, the party claiming waiver. *See In re Bruce Terminix Co.*, 988 S.W.2d at 704.

 In the mandamus context, the issue of waiver is a question of law subject to *de novo* review. *Id.* at 703–04. The determination of whether waiver has occurred is fact specific and must be decided on a case by case basis; there are no bright line rules. *See Menna v. Romero*, No. 04–99–00475–CV, 2000 WL 5003 at *2, (Tex.App.-San Antonio Jan. 5, 2000, no pet. history) (There is no set rule as to what constitutes waiver of an arbitration agreement; the question depends on the facts of each case and the determination must usually be made by the trier of fact.); *see S & R Co. of Kingston v. Latona Trucking Inc.*, 159 F.3d at 83. Among the factors to consider are (1) the amount of time from the start of litigation to the request for arbitration; (2) the amount of litigation, and (3) proof of prejudice, including taking advantage of pretrial discovery not available in arbitration, delay, and expense. *Id.* Actions supporting a conclusion of waiver may include some combination of filing an answer and counterclaim, engag-

ing in discovery, and moving for a continuance before requesting a stay pending arbitration. *See Central Nat'l Ins. Co. of Omaha v. Lerner*, 856 S.W.2d 492, 494 (Tex.App.Houston [1st Dist.] 1993, orig. proceeding).

In support of its claim that BES waived its right to arbitration by substantially invoking the judicial process, BMS points to certain events in the litigation that it characterizes as follows:

1. BES sought and was granted a severance of its action from the main coverage action and realignment as a plaintiff.

2. BES successfully moved for summary judgment on choice of law on the contract issues.

3. BES filed a petition and answer, participated in a three week rescission trial to verdict, and conducted discovery, as well as fact and expert depositions, on all issues.

4. BES took unfair advantage of discovery proceedings not available in arbitration proceedings.

 (a) BES conducted more than seventy-five (75) depositions.

 (b) BES deposed several witnesses designated by BMS on the contract issues. BES also designated its own expert, William Powers, on the contract issues.

 (c) BES conducted extensive written discovery, serving at least 230 formal requests to produce documents; 111 interrogatories, and 421 requests for admissions.

 (d) Seeking a declaratory judgment and alleging breach of contract, BES filed an amended petition in

which it became an active aggressor in the contract case—as a plaintiff.

In short, BMS claims BES acted inconsistently with its arbitration claim and further maintains it (BMS) was prejudiced by such conduct.

As evidenced by documents, pleadings, and hearing transcripts submitted with its mandamus, BES has consistently pursued its arbitration claim from the beginning of the controversy. In the written notice of "avoidance" of the policy in November 1994, BES first raised the arbitration issue. Within a month after BMS filed suit against BES in November 1994, BES filed its first motion to compel arbitration and request for a stay, which was denied by the trial court in January 1995. BES also submitted excerpts from transcripts of various hearings, demonstrating that from the time the first motion to arbitrate was denied in January 1995 until the trial judge revealed his intention in August 1997 to bifurcate the issues rather than sever them out and hold separate trials, the parties operated as if they were going to try the rescission issues alone.[1] The record further reflects the parties' understanding that after the trial on the rescission issues, the trial court would then make a determination of whether the contract issues would be tried or arbitrated. The excerpts submitted by BES from the August 1997 hearings bear out those contentions. However, at the August 21, 1997, hearing, Judge Mehaffy indicated, for the first time BES claims, that the "contract phase" of the trial would begin shortly after the rescission phase before the same jury, and the rescission issue would not be severed out. We note that the rationale behind holding a trial on the rescission issues was that if the fact finder

---

1. The trial judge indicated he would trifurcate the issues—i.e., try the rescission issues first, the contract issues second, and BMS's bad faith claims against BES third. Later, he discussed the trial methodology in terms of bifurcation of the rescission issues and the contract issues.

determined the contract was subject to rescission and, therefore, void, such a holding would render any claims under the contract, including arbitration, moot. Such an assumption is borne out by case law. *See generally Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 959 (10th Cir.1992) (A court is required to order arbitration under the Convention (Chapter 2 of Title 9 of the United States Code) if certain limited requirements are met unless the agreement is void, inoperative, or incapable of being performed.)

In September 1997, shortly after the trial judge's decision concerning the bifurcation of the rescission and contract issues, BES filed its second motion to compel arbitration—this time of the contract issues and BMS's bad faith claims. Once the trial court denied the second motion to compel arbitration in December 1997, BES filed its January 1998 petition for writ of mandamus with this Court. We denied the petition on the grounds that it was premature. At that point in time, the rescission issues had not been disposed of.

The trial of the rescission issues occurred in December 1998. On the day the jury returned a verdict in favor of BMS, the trial judge sent the parties a letter setting a March 29, 1999, trial date on the contract issues. At that point, BES filed its third motion to compel arbitration in state court and the following day removed the case to federal court. Some months later, the federal court remanded the case back to state court. In August 1999, the state district judge denied the third motion to compel arbitration, set a new trial date on the contractual issues, and denied BES's motion to sever out the rescission issues. BES then filed the present petition for writ of mandamus.

As set out above, the chronology of events reveals that BES has consistently sought arbitration throughout the litigation. From the inception of the controversy, it gave notice of its desire to arbitrate, and after litigation commenced, it continued to pursue its arbitration rights under the contract. We do not find that BES's participation in the rescission trial is inconsistent with its arbitration claim or that its notification of its claim of arbitration was in any way dilatory. To the contrary, BES pressed its claim for arbitration consistently and persistently since 1994.

In support of its waiver claim, BMS further points out that BES was realigned as a plaintiff in 1996. That is correct. The realignment, however, was the result of a joint motion, signed by both parties' attorneys, that placed the parties in the appropriate posture for the 1998 trial on the rescission issues, as mandated by the trial court. The trial court required the rescission issues to be tried first, and the realignment of parties reflected BES's burden of proving the rescission cause of action. We conclude the realignment does not evidence an intent by BES to waive arbitration on the contract issues or an invocation of the judicial process at odds with its claim for arbitration on the contract issues.

It is true, as BMS points out, that BES's original petition of October 1997, filed after the trial court had realigned the parties, contained not only a rescission cause of action but also a cause of action for breach of contract and attendant damages. However, the fact that BES also pleaded a cause of action for breach of contract is not a bar to its demand for arbitration on the contract issues in view of the fact that the trial court had announced in August 1997 its intention of proceeding to trial on the contract issues shortly after trial on the rescission issues. By requiring the trial to be bifurcated between the rescission and contract issues and by indicating in the August 21, 1997, hearing that contract phase of the trial would follow immediately on the heels of the trial of the rescission phase, BES was put in a position that

necessitated its being ready for trial, including having the appropriate pleadings supporting the contract issues in place. The same may be said of BES's January 1998 designation of William Powers as a rebuttal expert to BMS's expert on contract issues.[2] Under the narrow circumstances of this case, we will not hold that BES has waived its right to arbitration simply because it included causes of action on contract issues in its original petition of October 1997. We do not believe the law requires BES to make such a Hobson's choice and be left naked without appropriate pleadings to support its causes of action in the event the fact finder should find there was no rescission of the contract and BES would then be put to trial posthaste on the contract issues.

BMS also maintains BES waived its right to arbitration by successfully moving for summary judgment on the contract's choice of law provision in September 1997, shortly after the trial court indicated its intention of trying the rescission issues first. The contract provides that the policy shall be governed by New York law. Though BES was the movant in the summary judgment on the choice of law issue, the trial court's determination of which state's law to apply to the rescission issues urged by BES and the bad faith claims and Texas Insurance Code violations raised by BMS was not a resolution of the contract issues. We do not find that such action by BES demonstrates an intent to waive arbitration of the contract issues.

Finally, BMS contends that BES has substantially invoked the judicial process by participating in extensive discovery in the case. Without question, the discovery conducted by BES was protracted and voluminous; the sheer magnitude of it is self-evident. According to BMS, BES conducted more than seventy-five (75) depositions, and served over 200 requests to produce documents, 111 interrogatories, and 421 requests for admissions. In addition, BMS alleges BES conducted multiple depositions of the same witness relating to *all* the disputed issues between the parties and conducted depositions of several expert witnesses designated by BMS on the contract issues. BMS also points to numerous other examples of BES's invocation of the judicial process, as evidenced by, among other things, a docket sheet of electronic filings displaying the large number of filings in the case.

As with much of BMS's evidence, there is little, if anything, to indicate that the content of the particular pleading, deposition, or filing dealt with matters other than rescission issues. It must be noted, however, that BES does not dispute the fact that the evidence regarding the rescission issues overlaps with evidence on the contract issues. The fact of overlapping evidence does not in and of itself evidence an intent by BES to waive arbitration on the contract issues. According to BES, it had a right to conduct discovery on the rescission issues on which the trial court had required it to go to trial. BMS acknowledges that to be the case. They are both correct. Pre-trial discovery relating to non-arbitrable subject matter (the rescission issues) does not constitute waiver. *See Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1159 (5th Cir.1986); *Dickinson v. Heinold Secs., Inc.,* 661 F.2d 638, 642 (7th Cir. 1981). Even when arbitrable and non-arbitrable claims are intertwined and arise out of the same transaction, the arbitrable claims are still subject to arbitration. *See Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 215–18, 105 S.Ct. 1238, 1239–41, 84 L.Ed.2d 158, 162–63 (1985) (Under the FAA, federal district courts must compel

---

2. By virtue of docket control orders, the trial court set a deadline by which BES had to name its rebuttal experts.

arbitration of pendent arbitrable claims when a motion to compel arbitration is made and the parties have agreed to arbitrate their dispute, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.) As noted herein, a party should not be put to an either/or choice between seeking a rescission of a contract (a non-arbitrable claim in this case) or seeking arbitration on the contract issues (an arbitrable claim). *See General Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 927–30 (5 th Cir.1970).

■■■■ BMS also points to the attempts at mediation as an example of the unfair advantage taken by BES in discovery proceedings. However, we do not find that a party's attempt at settlement or mediation waives a claim of arbitration. Attempts at settlement are not inconsistent with an inclination to arbitrate and do not preclude the exercise of a right to arbitration. *See Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir.1991).

We turn now to the prejudice prong of the waiver test. Not only must BMS establish that BES acted inconsistently with its right to arbitrate, but it must also establish it was prejudiced by such actions. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 574. BMS maintains it has been prejudiced by the "vast and extensive use of pretrial discovery" and the expense it has incurred through discovery costs and attorneys' fees, including costs in excess of $182,000 for the special discovery master. In addition, BMS maintains it has been required to produce material that would not have otherwise been discoverable in arbitration.

Since we hold that BES is not required to make a choice between rescission issues and contract issues, and since the doctrine of intertwining is no longer the law, BMS then had the burden of showing prejudice by demonstrating the discovery obtained

by BES was not related to rescission. This BMS did not do. In fact, the over-whelming majority of the evidence submitted by BMS in its mandamus response regarding discovery issues is simply evidence that BES sought certain files and documents that would be relevant to whether BMS knew of the claims before 1991, the year of the inception of the contract. The evidence and analysis submitted by BMS do not set out which discovery material was related to rescission and which to contract issues, or whether or not the discovery at times overlapped.

Furthermore, the affidavit of the Rt. Hon. Sir Michael Kerr, an English barrister specializing in international commercial law, in which he opines that in an arbitration of the kind contemplated in this case, the *"likelihood* is that the tribunal would seek to limit the disclosure of documents," is not adequate to show the discovery material could not have been obtained in arbitration. The use of such phrases as "likelihood" of and "tend[ency]" to have "more limited disclosure in arbitration in England," does not establish that the discovery already obtained by BES would not also be obtainable in arbitration. These terms denote possibility and are not specifically applied to the discovery garnered by BES from BMS. The law places a "heavy" burden of proof on BMS to demonstrate prejudice. In making a determination of whether BMS proved it was prejudiced by the discovery material produced, the trial court had to apply the "heavy burden" standard to the evidence. In its application of the law to the facts, the trial court erred; the heavy burden standard under the prejudice prong was not met.

■■■■ We conclude, therefore, that the trial judge erred in applying the law —— the law being that there is a strong presumption in favor of arbitration, that a party must evidence an intent to waive arbitration, and that the party opposing

arbitration must show prejudice —— to the facts in this case, and thereby the trial judge abused his discretion in denying the motion to compel arbitration. BES's actions in calling for arbitration from the very beginning of the controversy in 1994, in filing three motions to compel arbitration over the space of five years, in removing the case to federal court in an attempt to obtain a favorable ruling on arbitration, and in filing two petitions for writ of mandamus, demonstrate consistency and persistence in its pursuit of arbitration, and not an intent to waive arbitration. Furthermore, BES's invocation of the judicial process in seeking first a judgment of rescission of the contract is not inconsistent with its pursuit of arbitration under a contract to which rescission was found not to apply. As case law has held, we should resolve any doubts about waiver in favor of arbitration. See *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 574. As evidenced by the record and our analysis herein, doubts about waiver exist. BES's issue number four is sustained.

The petition for writ of mandamus is conditionally granted to order respondent to vacate his order denying arbitration in the case below and enter an appropriate order compelling arbitration. We are confident that Judge Mehaffy will act in accordance with this opinion. The writ will only issue in the event he fails to comply.

WRIT CONDITIONALLY GRANTED.