**SERVICE CORPORATION INTERNATIONAL, et al., Appellants,**

v.

**Daniel LOPEZ and Consuelo Lopez, Appellees.**

**In re Service Corporation; SCI Texas Funeral Services, Inc. D/B/A Buena Vista Funeral Park; and SCI Management Corporation.**

**Nos. 13–04–467–CV, 13–04–472–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

April 21, 2005.

---

Lisa Powell, Charles C. Murray, Atlas & Hall, McAllen, for appellants/relators.

Benigno Trey Martinez, Martinez, Barrera & Martinez, David Willis, Law Office of David Willis, Brownsville, for appellees/real parties in interest.

Before Justices RODRIGUEZ, CASTILLO and GARZA.

## OPINION

Opinion by Justice GARZA.

In these consolidated proceedings,[1] appellants/relators Service Corporation International, SCI Texas Funeral Services, Inc. d/b/a Buena Vista Funeral Park, and SCI Management Corporation (collectively "SCI") complain of the trial court's denial of their motion to compel arbitration. We conditionally grant SCI's petition for writ of mandamus and dismiss its interlocutory appeal.

## I. BACKGROUND

The underlying suit concerns two "pre-need" funeral contracts executed in July 2002 and a third contract executed in November 2002 by SCI and Daniel Lopez, for the benefit of his father, George Lopez.[2] After the death of George Lopez, Daniel Lopez and Consuelo Lopez, the deceased's widow, brought suit against SCI alleging causes of action for violation of the DTPA, fraud, negligence, breach of contract, breach of warranty, and intentional infliction of emotional distress.

SCI filed a motion to compel arbitration and for abatement of suit pending arbitration, arguing that the claims raised by the plaintiffs are subject to the arbitration provisions in the contracts between SCI and Daniel. Before the trial court, the Lopezes advanced three grounds for avoiding arbitration: (1) the arbitration agreement in the November 2002 contract is a contract of adhesion, (2) the arbitration clause is unconscionable, and (3) the contract containing the arbitration clause was signed under duress. The trial court denied SCI's motion to compel arbitration because the arbitration agreement contained in the purchase agreements was one of adhesion, unconscionable, and signed under duress.[3]

SCI now appeals the trial court's denial of its motion, claiming that (1) the trial court clearly abused its discretion in denying defendants' motion to compel arbitration under the Texas General Arbitration Act ("TGAA"), Tex. Civ. Prac. & Rem.Code § 171.001 (Vernon Supp.2004–05), and (2) the trial court clearly abused its discretion in denying defendants' motion to compel arbitration under Texas common law. SCI has also filed a petition for a writ of mandamus, claiming that the arbitration clause is enforceable under the Federal Arbitration Act ("FAA"). See 9 U.S.C.S. § 1 (2005).

## II. PARALLEL PROCEEDINGS

When a party seeks to compel arbitration under both the TGAA and the FAA, it must pursue parallel proceedings: an interlocutory appeal of the order denying arbitration under the TGAA and a writ of mandamus from the denial of arbitration under the FAA. See Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 271 (Tex. 1992) (orig. proceeding); Pennzoil Co. v. Arnold Oil Co., 30 S.W.3d 494, 497 (Tex. App.-San Antonio 2000, orig. proceeding).

Our first task is to determine which law applies to the arbitration agreements at issue. The agreements in the present case do not specifically invoke either the FAA or the TGAA, and the trial court made no conclusion as to which act applies.

1. This opinion disposes of the appeals in cause numbers 13–04–467–CV and 13–04–472–CV.

2. The three contracts include: the July 2002 Goods and Services contract, the July 2002 Cemetery Lot contract and the November 2002 Goods and Services contract.

3. It is unclear whether the reasoning applied only to the arbitration agreement in the November 2002 contract or to the arbitration agreements in all of the contracts.

■ The FAA "applies to all suits in state or federal court when the dispute concerns 'a contract evidencing a transaction involving commerce.'" *Anglin Co.,* 824 S.W.2d at 269–70 (quoting 9 U.S.C.S. § 2 (2000)); *In re Profanchik,* 31 S.W.3d 381, 384 (Tex.App.-Corpus Christi 2000, orig. proceeding). The United States Supreme Court has held that the word "involving" in the FAA is broad and the functional equivalent of "affecting," signaling Congress' intent to exercise its Commerce Clause power to the fullest. *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 268, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *In re L & L Kempwood Assocs., L.P., v. Omega Builders, Inc.,* 9 S.W.3d 125, 127 (Tex.1999) (orig. proceeding) (per curiam). The transaction must in fact involve interstate commerce. *Allied–Bruce Terminix,* 513 U.S. at 281, 115 S.Ct. 834. The FAA does not require a substantial effect on interstate commerce; rather, it requires only that commerce be involved or affected. *L & L Kempwood Assocs.,* 9 S.W.3d at 127. A party who alleges interstate commerce may show it in several ways: (1) location of headquarters in another state, (2) transportation of materials across state lines, (3) manufacture of parts in a different state, (4) billings prepared out of state, and (5) interstate mail and phone calls in support of a contract. *See Stewart Title Guar. Co. v. Mack,* 945 S.W.2d 330, 333 (Tex.App.-Houston [1st Dist.] 1997); *see also Anglin,* 842 S.W.2d at 270

■ Seeking to establish the contract's impact on interstate commerce and thus the applicability of the FAA, SCI tendered the affidavit of its employee, Eduvijes Trevino.[4] In response, the Lopezes argued that interstate commerce was not involved because the entire contract was to be performed in Texas and because none of the arbitration provisions in the contracts between the parties stated that the contract involved interstate commerce.

■ Whether the parties contemplated that their transaction would substantially affect interstate commerce is irrelevant; if the transaction affects interstate commerce "in fact," the arbitration provision is governed by the FAA. *Allied–Bruce Terminix,* 513 U.S. at 281, 115 S.Ct. 834. We conclude that the contracts at issue evidence "transactions involving commerce" and are therefore subject to the FAA.[5] *See id.* (holding that the FAA applied because in addition to the multi-state nature of Terminix and Allied–Bruce, the termite treating and house repairing material used by Allied–Bruce came from outside Alabama); *Kempwood Assocs.,* 9 S.W.3d at 127 (holding that the contract involved interstate commerce because the parties to the contract resided in different states and the renovation work on the Houston apartments was to be done by a Texas business for Georgia owners); *BWI Cos. v. Beck,* 910 S.W.2d 620, 622–23 (Tex.App.-Austin 1995, orig. proceeding) (holding that arbitration agreement between employer and employee related to interstate commerce,

4. Trevino averred that, through Buena Vista, SCI sells merchandise and services to out-of-state and international customers. Such items include cemetery, lawn crypt, and mausoleum spaces; interment services; memorials; and related items. Further, many of the goods that Buena Vista sells to Texas residents are purchased or manufactured outside of Texas, such as caskets and grave markers. Buena Vista also utilizes goods purchased or manu-

factured outside of Texas for the tent set-up used during funeral services, including, but not limited to, the tents, the lowering devices, carpets, and chair covers.

5. *See Serv. Corp. Int'l v. Fulmer,* 883 So.2d 621, 629 (Ala.2003) (finding that the provision of funeral goods and services is within Congress's commerce power).

even though employee only worked and made deliveries in Texas, because employer had facilities in Texas and other states and delivered products across state lines); *Lost Creek Mun. Util. Dist. v. Travis Indus. Painters, Inc.*, 827 S.W.2d 103, 105 (Tex.App.-Austin 1992, writ denied) (holding that agreement between Texas residents, concerning work performed in Texas, related to interstate commerce because paint and epoxy were manufactured outside Texas and contractor's performance bond was issued by nonresident surety company).

## III. MANDAMUS

Mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *See Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex.1997); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992); *In re Nestle USA–Bev. Div., Inc.*, 82 S.W.3d 767, 770 (Tex.App.-Corpus Christi 2002, orig. proceeding). When a trial court erroneously denies a party's motion to compel arbitration under the FAA, the movant has no adequate remedy at law and is entitled to a writ of mandamus. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 88 (Tex.1996) (orig. proceeding) (per curiam).

A party seeking to compel arbitration must present sufficient evidence to establish its right to arbitrate under the FAA. *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996) (orig. proceeding) (per curiam). If it does, and the opposing party does not defeat that right,

the trial court must compel arbitration. *Id.* Because state and federal policies continue to favor arbitration, there is a presumption favoring agreements to arbitrate under the FAA. *Id.* The trial court's determination of an arbitration agreement's validity is a legal question subject to de novo review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003); *In re Kellogg Brown & Root*, 80 S.W.3d 611, 615 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding).

In *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002), the Fifth Circuit set forth the framework for adjudicating motions to compel arbitration under the FAA. Courts must determine whether the parties agreed to arbitrate the dispute. *Id.* This determination is made on the basis of "ordinary state-law principles that govern the formation of contracts." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). The determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.*

In the instant case, SCI met its burden of presenting evidence of three arbitration agreements that govern the dispute between the parties.[6] The Lopezes do not deny the existence of arbitration agreements in the three contracts, nor do they dispute that the issues raised in their petition fall within the scope of the arbitration

---

6. As evidence of arbitration agreements, SCI produced the July 2002 Goods and Services contract, the July 2002 Cemetery Lot contract and the November 2002 Goods and Services contract signed by Daniel, all of which contain arbitration agreements. The arbitration clauses provide in relevant part: "You agree that any claim, including interpretation of this

arbitration clause, shall be submitted to and resolved by mandatory and binding arbitration in accordance with the laws of Texas." "By signing this Contract, You agree that any claim shall be resolved by arbitration. You further agree to give up your right to a court or jury trial as well as any right to appeal."

agreements. However, they do challenge the validity of the arbitration agreement contained in the November 2002 contract, as well as the effect of the arbitration agreements on the claims brought by Consuelo.

### A. NOVEMBER 2002 CONTRACT

■ An agreement to arbitrate is valid, irrevocable, and enforceable unless grounds exist at law or in equity for the revocation of any contract, such as fraud or unconscionability. *See* 9 U.S.C. § 2 (2005); *Allied–Bruce,* 513 U.S. at 273, 115 S.Ct. 834.

■ The Lopezes argue that the arbitration agreement in the November 2002 contract is unenforceable for three reasons: (1) it is a contract of adhesion, (2) it is unconscionable, and (3) the contract was signed under duress. We note that these defenses must specifically relate to the arbitration provision itself, not the contract as a whole, if they are to defeat arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

### 1. Adhesion

■ The Lopezes argue that the arbitration agreement in the November 2002 contract was not a negotiated term, but merely part of a standardized form contract, which was a contract of adhesion. They state, without citing to authority, that contracts of adhesion will not be enforced unless they are conscionable and within the reasonable expectations of the parties. Texas law defines an adhesion contract as a contract in which one party has absolutely no bargaining power or ability to change the contract terms. *See In re H.E. Butt Grocery Co.,* 17 S.W.3d 360, 370–71 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding). The Lopezes cite *Oakwood* in support of their contention

that adhesion contracts cannot be enforced. However, in *Oakwood,* the supreme court stated that adhesion contracts are not automatically unconscionable or void. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 574 (Tex.1999) (orig. proceeding). In other words, the party seeking to avoid the arbitration clause must prove more than that the contract was offered on a take it or leave it basis. See *In re Halliburton Co.,* 80 S.W.3d 566, 572 (Tex.2002) (orig. proceeding); *In re Oakwood,* 987 S.W.2d at 574. Consequently, we conclude that the trial court could not have properly denied SCI's motion to compel arbitration solely on the ground that the arbitration clause was an adhesion contract.

### 2. Unconscionability

■ There is nothing per se unconscionable about arbitration agreements. *EZ Pawn,* 934 S.W.2d at 90. The basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the arbitration clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. *In re FirstMerit,* 52 S.W.3d 749, 757 (Tex.2001) (orig. proceeding). Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision; and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton Co.,* 80 S.W.3d 566 at 571. Courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision. *Id.* at 572.

■ The Lopezes argue that the arbitration clause is unconscionable because

the SCI agent who executed the contract was not instructed as to what an arbitration clause was, failed to disclose the provision or explain its implications, and because the contract resulted from unequal bargaining power. These arguments relate to procedural, rather than substantive, unconscionability. Even taken as true, the Lopezes' allegations do not amount to procedural unconscionability. *See In re Am. Homestar of Lancaster Inc.*, 50 S.W.3d 480, 489 (Tex.2001) (granting mandamus to compel arbitration, noting the strong policy in favor of arbitration and stating that "perceived uneven bargaining power is not a justifiable reason to hold that arbitration agreements are never enforceable"); *In re H.E. Butt Grocery Co.*, 17 S.W.3d at 371 ("A party who signs a contract containing an arbitration provision does not have to be told about the provision, but is presumed to know the contents of the contract."). Accordingly, the trial court could not have properly denied SCI's motion to compel arbitration based on procedural unconscionability.

### 3. Duress

▆▆▆▆ The Lopezes' final defense against the validity of the arbitration agreement is that the November 2002 contract was signed under duress. This issue relates to the contract as a whole and not solely the arbitration provision. It is therefore an issue to be decided in arbitration. *See In re FirstMerit*, 52 S.W.3d at 756.[7]

### B. Scope of arbitration clause

▆▆▆▆ We now address whether the claims raised by the Lopezes fall within the scope of the arbitration agreement. When the FAA applies, federal law determines whether a dispute is arbitrable. *Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex.1995) (orig. proceeding) (per curiam) (applying federal law); *Prudential–Bache Sec., Inc. v. Garza*, 848 S.W.2d 803, 806 (Tex.App.-Corpus Christi 1993, orig. proceeding). We use federal common law to interpret the arbitration clause at issue. *Prudential Sec., Inc.*, 909 S.W.2d at 899. To determine whether a claim falls within the scope of an arbitration agreement, the court looks at the terms of the agreement and the factual allegations in the petition, not the causes of action asserted. *See id.* at 900. Generally, if the facts alleged "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract that is subject to the arbitration agreement, the claim will be arbitrable. *See Anglin*, 842 S.W.2d at 271; *Nestle*, 82 S.W.3d at 776; *Hou–Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205–06 (Tex.App.-Houston [1st Dist.] 1997, orig. proceeding) (citing cases). However, if the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration. *See Fridl v. Cook*, 908 S.W.2d 507, 511 (Tex. App.-El Paso 1995, writ dism'd w.o.j.).

▆▆▆▆ The FAA favors arbitration and any doubts as to whether a claim falls within the scope of an arbitration agreement must be resolved in favor of arbitration. *Prudential*, 909 S.W.2d at 899. Thus, a court should not deny a motion to

---

7. In a similar argument, the Lopezes contend that the arbitration agreement should not be enforced because when Daniel signed the contract, it lacked prices, names, or terms. However, these arguments also relate to the contract as a whole and not to the arbitration clause itself. *See Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. 1801. Therefore, this issue should be submitted to arbitration. *See Shearson Lehman Bros. v. Kilgore*, 871 S.W.2d 925, 928 (Tex.App.-Corpus Christi 1994, orig. proceeding).

compel arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id.* (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir.1990)).

■ The November 2002 contract contains a broad arbitration clause that states in relevant part "by signing this agreement, you are agreeing that any claim you may have against the seller shall be resolved by arbitration...." In their petition, the Lopezes alleged that SCI (1) placed incorrect flowers for viewing, (2) failed to properly prepare the deceased for viewing, (3) did not provide three days of viewing as agreed upon, (4) failed to properly store the deceased in a refrigeration unit, (5) failed to provide a current payoff schedule, and (6) delivered the deceased's body at the incorrect time. These allegations are sufficiently related to the transaction to be within the scope of the arbitration agreement.[8]

■ Consuelo also alleged a cause of action against SCI for intentional infliction of emotional distress. The Lopezes argue that Consuelo's claim is not within the scope the arbitration agreement because she was not a party to any of the contracts and was not a third party beneficiary. The Lopezes cite to *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999) in support of their argument that a court will not create a third party beneficiary contract by implication. They assert that because Consuelo did not sign the contract she is not subject to arbitration because to bind a non-signatory to an arbitration provision in a contract, the intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out.

SCI argues that Consuelo's claims are for breach of contract and her claims are factually intertwined with the claims of Daniel. SCI reasons that because all the allegations are made by all plaintiffs generally, against all defendants generally, the claims asserted by Consuelo are subject to arbitration. *See In re FirstMerit*, 52 S.W.3d at 755; *In re MacGregor (FIN) Oy*, 126 S.W.3d 176, 183 (Tex.App.-Houston [1st Dist.] 2003, orig. proceeding).

To determine whether Consuelo is bound by the arbitration agreement under Texas contract law, we apply the law as interpreted by the state's highest court, in this case, the Texas Supreme Court. *See Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272, 274 (5th Cir.1991). Texas courts have found non-signatories bound to arbitration agreements in two situations: first where the non-signatory sued on the contract; and second, where the non-signatory was a third-party beneficiary of the contract. *Fleetwood*, 280 F.3d at 1074.

■ The Lopezes argue that Consuelo is exempt from arbitration because she did not sign the contract. However, a non-signatory can be bound by the terms of an arbitration provision in an agreement if the non-signatory is asserting claims that require reliance on the terms of the written agreement containing the arbitration provision. *S.W. Tex. Pathology Assocs. v. Roosth*, 27 S.W.3d 204, 208 (Tex. App.-San Antonio 2000, pet. dism'd w.o.j.) (holding that a non-signatory can only be bound by the terms of an arbitration provision in an agreement if the claims asserted require reliance on the terms of the written agreement containing the arbitration

---

8. The Lopezes' claim for violations of the DTPA is also subject to arbitration. Statutory causes of action, such as the Lopezes' DTPA claim, have been held to fall within the scope of arbitration agreements. *See Anglin*, 842 S.W.2d at 270–71 (holding that DTPA claim held subject to arbitration, since FAA preempts DTPA's non-waiver provisions).

provision.). In other words, the non-signatory's claim must seek to enforce the terms of the written agreement containing the arbitration provision in order for the non-signatory to be bound to arbitrate. *Id.* The non-signatory cannot enforce specific terms of the agreement while seeking to avoid the arbitration provision. *Id.; see In re FirstMerit,* 52 S.W.3d at 755–56 (holding that the owners of a mobile home, who received the home as a gift from their parents and were non-signatories to the arbitration agreement between the seller and the parents, were bound by the agreement because "a litigant who sues based on a contract subjects him or herself to the contract's terms"). We believe that *FirstMerit* controls the issue before us because Consuelo fully joined Daniel's contract claims and therefore subjected herself to the contract's terms, including the arbitration provision. *In re FirstMerit,* 52 S.W.3d at 755–56. In fact, the Lopezes' live petition makes no distinction between Daniel's claims and Consuelo's claims.[9] Accordingly, we hold that Consuelo's claim for intentional infliction of emotional distress must be submitted to arbitration.

## IV. CONCLUSION

 As we have already stated, to defeat arbitration, the defenses must specifically relate to the arbitration agreement itself, not the contract between the parties as a whole. *See id.; Prima Paint,* 388 U.S. at 403–04, 87 S.Ct. 1801. Because we have found that the Lopezes' defenses relate to the entire contract and must be decided by the arbitrator, and we have found that their claims are within the scope of the agreement, we conclude that the trial court abused its discretion by denying SCI's motion to compel arbitra-

tion. A party erroneously denied the right to arbitrate under the FAA has no adequate remedy on appeal, and mandamus relief is appropriate. *See Anglin,* 842 S.W.2d at 272–73.

Accordingly, we conditionally grant the writ of mandamus. The trial court is directed to vacate its order denying arbitration and to issue an order compelling arbitration. We are confident that the trial court will comply promptly. The writ will issue only if this confidence proves misplaced. We dismiss SCI's interlocutory appeal.

---

9. On appeal, the Lopezes now assert that only Daniel is suing for breach of contract, but we base our conclusion on the allegations in the petition which do not distinguish Daniel's claims from Consuelo's claims.