COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

 

                    NUMBER 13-04-578-CV 

 

CAPPADONNA ELECTRICAL 
MANAGEMENT, 

METRO  ELECTRIC,
DURRANT ARCHITECT, INC., 

J-III CONCRETE COMPANY, INC., COMMERCIAL 

ROOFING
SYSTEMS, ET AL.,                                                 Appellants,

                                                             v.


CAMERON
COUNTY,                                                               Appellee,

 

 

 

       On appeal from the 404th District Court

                                       of
Cameron County, Texas.

 

 

 

                                    NUMBER 13-05-165-CV

 

IN RE:  CAPPADONNA
ELECTRICAL  MANAGEMENT, ET AL.

 

 

 

            On Petition for Writ of Mandamus.

 

 

 

 

 

      O P I N I O N








 

     Before Chief Justice
Valdez and Justices Hinojosa and Garza

  Opinion by Chief
Justice Valdez

This dispute originally arose between Cameron County
and Landmark Organization, L.P., a general construction contractor, in
connection with damages allegedly sustained by the County following the
construction of a new county jail complex. 
Cameron County, when filing suit against Landmark, also sued various
subcontractors (Athe Subcontractors@)[1]
under claims of negligence, negligence per se, breach of express warranty, and
breach of fiduciary duty.  Landmark then
filed claims for contribution and indemnity against the Subcontractors, who in
turn filed cross-claims for contribution and indemnity against Landmark.








Landmark and the Subcontractors both filed motions
to compel arbitration.  On October 29,
2004, respondent, the Honorable Abel C. Limas of the 404th District Court of
Cameron County, Texas, signed an order (1) denying the Subcontractors= motions to compel arbitration, (2) granting
Landmark=s motion to compel arbitration with the County, and
(3) severing the County=s claims against Landmark into a separate lawsuit.[2]  The order did not specify whether the
Subcontractors= claims regarding arbitration were governed by the
Federal Arbitration Act (AFAA@) or the Texas General Arbitration Act (ATAA@).  

The Subcontractors then filed two parallel
proceedings seeking relief from the October 29 order.  In order to invoke this Court=s jurisdiction for an appeal under the FAA, the
Subcontractors filed a petition for writ of mandamus, docketed as Cause No.
13-05-165-CV.  Also, in order to invoke
this Court=s jurisdiction for an appeal arising under the TAA,
the Subcontractors filed an interlocutory appeal, docketed as Cause No.
13-04-578-CV.  In accordance with the
instructions of the supreme court for such cases, we will consolidate the two
proceedings and render a decision disposing of both simultaneously, thereby
conserving judicial resources and the resources of the parties.  See In re Valero Energy Corp., 968
S.W.2d 916, 917 (Tex. 1998). 

Most of the Subcontractors involved in the case have
filed separate briefs; however, because the briefs raise the same contentions
and arguments, we will address them all together.

Jurisdiction








We first must consider the question of our
jurisdiction over this combined appeal and original proceeding.  An interlocutory appeal is an appropriate
vehicle to review an order denying arbitration under the TAA.  See Tex.
Civ. Prac. & Rem. Code Ann. '' 171.021, 171.098(a)(1) (Vernon 2005).  Mandamus is appropriate to review an order
denying arbitration when the FAA applies. 
See In re Valero, 968 S.W.2d at 916 (citing Jack B. Anglin Co.
v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992) (orig. proceeding)); In re
MONY Secs. Corp. v. Durham, 83 S.W.3d 279, 282 (Tex. App.BCorpus Christi 2002, combined appeal & orig.
proceeding).   The arbitration agreement
in the present case does not specifically invoke either the FAA or the TAA, and
the trial court made no finding as to which act applies.

The FAA will govern an arbitration agreement
contained in a contract evidencing a transaction involving commerce.  See In re MONY, 83 S.W.3d at 282.  A contract "evidences a transaction
involving commerce" if it involves interstate commerce.   Id. (citing  Allied‑Bruce Terminix Co. v. Dobson,
513 U.S. 265, 277‑81 (1995)). 
Here, the Subcontractors argue that the transaction involved interstate
commerce because several subcontractors were out-of-state parties and because
materials had to be shipped to Texas from other states.  The County, in its appellate brief, does not
respond to this argument directly but instead notes that if this Court
determines that the transaction did not involve interstate commerce and must be
reviewed under the TAA, we will not have jurisdiction to review the order of
severance.  

We conclude that interstate commerce was clearly
involved in the construction of the county jail complex, and therefore the
arbitration provisions at issue in both contracts are subject to the FAA.  See In re MONY, 83 S.W.3d at 282‑83;
see also Serv. Corp. Int=l v. Lopez, 162 S.W.3d 801, 807-08 (Tex. App.BCorpus Christi 2005, no pet.) (listing types of
interstate activity from prior cases that have served to establish interstate
commerce and thus invoke the FAA).  Thus,
mandamus is the appropriate vehicle for relief. 
See In re MONY, 83 S.W.3d at 282-83.   Accordingly, we dismiss the interlocutory
appeal in Cause No. 13-04-578‑CV for want of jurisdiction.  See id. at 283.  We will address only the petition for writ of
mandamus. 

Mandamus








The Subcontractors allege in their petitions for
writ of mandamus that the trial court erred and abused its discretion when it
entered the order denying Subcontractors= motion to compel arbitration because of the
application of the doctrines of (1) incorporation by reference and (2)
equitable estoppel.  Additionally, the
Subcontractors argue the following:  the
trial court erred by entering the order to sever the Subcontractors= suit from Landmark=s
suit; the Subcontractors have not waived their right to arbitrate; the
arbitration agreement is not unconscionable; and respondent Judge Limas=s findings regarding security problems at the jail
lack evidentiary support and are immaterial to the question of whether the
Subcontractors are entitled to arbitration. 
For all of these reasons, the Subcontractors argue they are entitled to
a writ of mandamus reversing the trial court=s
decision and allowing them to arbitrate their claims.

Mandamus will issue only to correct a clear abuse of
discretion when there is no adequate remedy by appeal. In re Redondo, 47
S.W.3d 655, 658 (Tex. App.BCorpus Christi 2001, orig. proceeding).  "A trial court abuses its discretion
when it does not follow guiding rules and principles and reaches an arbitrary
and unreasonable decision."  Id.  Mandamus relief is available to a party who
is improperly denied arbitration under an agreement subject to the FAA.  See EZ Pawn Corp. v. Mancias, 934
S.W.2d 87, 88 (Tex. 1996). 








A party seeking to compel arbitration must (1)
establish the existence of an arbitration agreement and (2) show that the claims
asserted fall within the scope of that agreement.  In re Oakwood Mobile Homes, Inc., 987
S.W.2d 571, 573 (Tex. 1999) (orig. proceeding); In re C & H News Co.,
133 S.W.3d 642, 645 (Tex. App.BCorpus Christi 2003, orig. proceeding).  Although courts generally enforce arbitration
agreements, a court may not order arbitration in the absence of such an
agreement.  See Freis v. Canales,
877 S.W.2d 283, 284 (Tex. 1994).  The
parties' agreement to arbitrate must be clear. 
See Mohamed v. Auto Nation USA Corp., 89 S.W.3d 830, 835 (Tex.
App.BHouston [1st Dist.] 2002, no pet., combined appeal
& orig. proceeding).  If one party
denies that there is a binding arbitration agreement, the trial court may
summarily decide whether to compel arbitration on the basis of uncontroverted
affidavits, pleadings, discovery, and stipulations.  See Jack B. Anglin Co., 842 S.W.2d at
269.  Whether there is an enforceable
agreement to arbitrate is a question of law and is therefore reviewed de novo.  See Tenet Healthcare Ltd. v. Cooper, 960
S.W.2d 386, 388 (Tex. App.BHouston [14th Dist.] 1998, pet. dism'd w.o.j.). 

The Texas Supreme Court noted that there are six
recognized theories that may be used to bind non-signatories to arbitration
agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4)
alter ego, (5) equitable estoppel, and (6) third‑party beneficiary.  See In re Kellogg, Brown & Root, 166
S.W.3d 732, 739 (Tex. 2005).  These six
theories arise out of federal law principles of contract and agency law but are
to be applied by state courts reviewing arbitration disputes under the
FAA.  See id.  The Subcontractors here allege that they
are entitled to arbitration under the theories of incorporation by reference
and equitable estoppel.

Incorporation by Reference








Under the doctrine of incorporation by reference,
where one contract refers to another contract or instrument, the second
document may properly constitute part of the original contract.  See City of Port Isabel v. Shiba, 976
S.W.2d 856, 858 (Tex. App.BCorpus Christi 1998, pet. denied).  Disputes relating to this doctrine often
raise questions of contract interpretation. 
See, e.g., In re C&H News Co., 133 S.W.3d 642,
645 (Tex. App.BCorpus Christi 2003, orig. proceeding).  In construing the Subcontractors= rights and duties under their subcontracts, our
primary concern is to ascertain and give effect to the intentions of the
parties as expressed in the subcontract. 
See Kelley‑Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d
462, 464 (Tex. 1998). To ascertain the true intentions of the parties to the
subcontract, we examine the entire agreement in an effort to harmonize and give
effect to all of the provisions of the contract so that none will be rendered
meaningless.  See MCI Telecomms. Corp.
v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999).  When a written contract is so worded that it
can be given a certain or definite legal meaning or interpretation, it is not
ambiguous, and courts construe it as a matter of law.  Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124
S.W.3d 154, 157 (Tex. 2003). 

In the trial court=s
order granting Landmark=s motion to compel arbitration and denying the
Subcontractors= motions to compel, the court found that there was a
two-part APrime Contract@ between Cameron County and Landmark consisting of a
standard form agreement and a standard list of contractual conditions.  The conditions include the following
provision regarding arbitration:








Any claims, disputes, or controversies between the
parties arising out of or relating to the Agreement, or the breach thereof,
which have not been resolved . . . shall be decided by arbitration in
accordance with the Construction Industry Arbitration Rules of the AAA then in
effect, unless the parties mutually agree otherwise.

 

Based on this agreement, the trial court found that
there was an enforceable agreement to arbitrate between Landmark and Cameron
County, and it accordingly ordered arbitration. 


However, the trial court also found that the
Subcontractors Aare not parties to the Prime Contract between the
County and Landmark, and the Subcontractors are thus not parties to the
arbitration clause in the Prime Contract.@  The trial
court based its findings on the following express provision in the Prime
Contract:

Nothing in the Contract Documents is intended or
deemed to create any legal or contractual relationship between Owner [the
County] and any Design Consultant. . . . 
Nothing in the Contract Documents is intended or deemed to create any
legal or contractual relationship between Owner [the County] and any
Subcontractor or Sub-Subcontractor including but not limited to any third-party
beneficiary rights.

 

The trial court also found that the standard form
subcontracts enacted between Landmark and the Subcontractors did not attempt to
incorporate the terms of the Prime Contract into the subcontracts.  

The Subcontractors characterize this finding as Ainexplicable,@ noting that the standard form subcontracts signed
by themselves and Landmark contain the following provision:








Insofar
as the provisions of the General Contract do not conflict with specific
provisions herein contained, they and each of them are hereby incorporated into
this subcontract as fully as if completely re-written herein, except that all
of said non-conflicting provisions are amended as follows: wherever the AOwner@ is referred to therein, the word AContractor@ shall be substituted therefor, and wherever the AContractor@ is referred to therein the word ASubcontractor@ shall be substituted therefor.  The Subcontractor agrees not to violate any
term, covenant, or condition of the General Contract.

 

The Subcontractors refer to this
provision as the Aincorporation provision@ and argue that it serves to contractually bind them
to the arbitration agreement signed by Cameron County and Landmark.[3]  








We disagree. 
The incorporation provision of the standard form subcontract clearly
borrows some of the terms of the general contract between Cameron County and
Landmark but is nonetheless a different and separate contract between the
Subcontractors and Landmark.  The
incorporation provision does not, however, create a relationship between the
Subcontractors and the County, nor does it impose any duties or obligations on
the Subcontractors with respect to the County. 
All references to Cameron County are in fact explicitly removed from the
language of the subcontract by operation of the incorporation provision.  Furthermore, we find it significant that the
incorporation provision first dictates the removal of all mention of the
County so that only Landmark and the Subcontractors are named parties in the
contract, and then adds that the Subcontractor agrees not to violate any
term of that amended, Cameron County-less contract.  Thus, not only does the Prime Contract signed
by Cameron County specifically disclaim any contractual relationship with a
subcontractor, the subcontract signed by the Subcontractors contains no
reference to the County or to the County=s relationship with Landmark. 

This conclusion is in line with the cases cited by
the Subcontractors for support of their incorporation-by-reference argument,
i.e., In re C&H News Co., 133 S.W.3d at 645, and Teal Constr. Co.
v. Darren Casey Interests, Inc, 46 S.W.3d 417, 420 (Tex. App.BAustin 2001, pet. denied).  The In re C&H News Co. opinion
from this Court recognized incorporation by reference in the context of
arbitration clauses, but only to the extent that a signatory to the agreement
could be bound by an arbitration clause in the incorporated document.  See In re C&H News Co., 133 S.W.3d
at 645-47.  The Teal Constr. Co.
case also held that a document incorporated by reference in a contract could
bind a party who has signed that contract. 
See Teal Constr. Co., 46 S.W.3d at 420.  Applying the reasoning from those previous
cases here, only the Subcontractors and Landmark, as signatories to the subcontract,
would be bound by the arbitration clause incorporated into their
subcontracts.  In no case cited by the
Subcontractors was a non-signatory third-party compelled through the
incorporation-by-reference doctrine to enforce a provision of a document it did
not sign or incorporate. 








The incorporation by reference doctrine applies when
a party incorporates a document by reference into its own contract and thereby
binds itself to provisions within the incorporated document.  See City of Port Isabel, 976 S.W.2d at
858. The Subcontractors= unilateral act cannot bind Cameron County, and
Cameron County did not incorporate the Landmark-Subcontractors agreement.  This issue is overruled.  

Equitable Estoppel

The Subcontractors also argue that the principle of
equitable estoppel precludes the County from denying them the right to
arbitrate the County=s claims. 
Where a signatory to a contract containing an arbitration agreement has
sued a non-signatory, equitable estoppel allows the non-signatory to compel the
signatory to arbitrate in two circumstances: (1) when the signatory has raised
allegations of substantially interdependent and concerted misconduct by both
the non-signatory and one or more of the signatories to the contract; or (2)
when the nature of the signatory=s claims against the non-signatory requires reliance
on the agreement containing an arbitration provision.  See Merrill Lynch Trust Co. FSB v. Alaniz,
159 S.W.3d 162, 170 (Tex. App.BCorpus Christi 2004, orig. proceeding);  In re Hartigan, 107 S.W.3d 684, 691 (Tex.
App.BSan Antonio 2003, orig. proceeding).  In other words, the non‑signatory is
bound to arbitrate if its claim seeks to enforce the terms of the written
agreement containing the arbitration provision. 
See Lopez, 162 S.W.3d at 812. The non‑signatory cannot
enforce specific terms of the agreement while seeking to avoid the arbitration
provision.  Id.  The application of this doctrine falls within
the trial court's discretion.  Merrill
Lynch Trust Co., 159 S.W.3d at 170.








The Texas Supreme Court has limited the application
of this doctrine in its In re Kellogg, Brown & Root opinion:

[A]lthough a non‑signatory's claim may relate
to a contract containing an arbitration provision, that relationship does not,
in itself, bind the non‑signatory to the arbitration provision.  Instead, a non‑signatory should be
compelled to arbitrate a claim only if it seeks, through the claim, to derive a
direct benefit from the contract containing the arbitration provision.

  

In re Kellogg, Brown & Root, 166 S.W.3d at 741 (emphasis added).  The In re Kellogg, Brown & Root
opinion, in reaching this conclusion, relied on several federal cases which
further defined direct versus indirect benefits:  A[T]he benefit derived from an agreement is indirect
where the non-signatory exploits the contractual relation of parties to an
agreement, but does not exploit (and thereby assume) the agreement itself.@  MAG
Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 61 (2nd Cir. 2001); see Int'l
Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411,
417-18 (4th Cir. 2000).  More recently,
the supreme court again applied the equitable principal of estoppel to compel a
non-signatory to arbitrate claims it raised under a contract that contained an
arbitration provision, concluding that Awhen a nonparty consistently and knowingly insists
that others treat it as a party, it cannot later >turn
its back on the portions of the contract, such as an arbitration clause, that
it finds distasteful.= A nonparty cannot both have his contract and defeat
it too.@  In re
Weekley Homes, No. 04-0119, 2005 Tex. LEXIS 817, at *21, 49 Tex. Sup. J.
55  (Oct. 28, 2004, orig. proceeding)
(citations omitted).  

In its claims against the Subcontractors, Cameron
County seeks damages for breach of fiduciary duty by alleging the following:








The
agreement between the County and Landmark required results in strict compliance
with the agreement between them. 
Landmark=s performance pursuant to their agreement with the
County did not strictly conform to those requirements and is therefore
defective.  Applicable construction
regulations and/or practices were not followed by Landmark and some or all of
[the Subcontractors].  Landmark and the
[Subcontractors] are subsequently liable under their agreement with the
County.  Landmark and the
[Subcontractors] failed to strictly comply with the agreement and are liable
for damages proximately caused by such breach . . . .

 

In making this allegation against the
Subcontractors, the County has implied that the Subcontractors and the County
were in a contractual relationship with each other via the intermediate
contracts they both made with Landmark: Landmark and the Subcontractors both
are Aliable under their agreement with the County@ and Afailed to strictly comply with the agreement.@  The petition
only refers to a single Aagreement,@ implying that the series of separate agreements
between Cameron County and Landmark, and Landmark and the Subcontractors, can
be combined into a single agreement for the purposes of this suit in which
Cameron County is attempting to enforce the terms of the Landmark-Subcontractor
agreement.  The County has thus attempted
to Aexploit (and thereby assume) the
[Subcontractor-Landmark] agreement itself,@ and has not simply attempted to A[exploit] the contractual relation of [the] parties.@  MAG
Portfolio Consult, 268 F.3d at 61; see In re Kellogg, Brown & Root,
166 S.W.3d at 741.  This establishes
direct benefits estoppel even under the strict test espoused in In re
Kellogg, Brown & Root.   








The County, as the non‑signatory to the
Landmark-Subcontractor contract, cannot attempt to enforce specific terms of
the subcontract and thereby obtain a direct benefit from the contract while
simultaneously seeking to avoid the arbitration provision.  See Lopez, 162 S.W.3d at 812.   The County is equitably estopped from
preventing arbitration from occurring.[4]  Accordingly, we conclude that the trial court
erred by denying the Subcontractors= motion to compel, and further, that this error
constituted an abuse of discretion.  See
Garza, 848 S.W.2d at 806 (AA trial court abuses its discretion by failing to
correctly apply the [FAA] to the facts of a case.@).  We sustain this issue.

  Remaining
Issues

The Subcontractors also raised the following issues
in their petitions for writ of mandamus: 
(1) the trial court erred by entering the order to sever the
Subcontractors= suit from Landmark=s
suit; (2) the Subcontractors have not waived their right to arbitrate; (3) the
arbitration agreement is not unconscionable; and (4) respondent Judge Limas=s findings regarding security problems at the jail
lack evidentiary support and are immaterial to the question of whether the
Subcontractors are entitled to arbitration.  









Responding to the first issue regarding the order of
severance, we note that following the severance of the Subcontractors= suit, Landmark and the County successfully arbitrated
their claims to settlement.  When there
has ceased to be an active controversy, Athe decision of an appellate court would be a mere
academic exercise.@  Hanna v.
Godwin, 876 S.W.2d 454, 457 (Tex. App.BEl Paso 1994, no writ).   When events occur after a judgment which
render the issue before this Court moot, we may not decide the appeal.  Id. (citing Gen. Land Office v. OXY
U.S.A., Inc., 789 S.W.2d 569, 570‑71 (Tex. 1990)).  Thus, the issue of severance of the
Subcontractors= claims is rendered moot as it would no longer be
possible for this Court to remedy error, if any, in the order. See Tex. R. App. P. 43.2 (listing potential
types of judgment this Court may render).

With regard to the remaining issues, we note that
they respond to an earlier order signed by respondent.  The final corrected order, signed by
respondent on October 29, 2005, makes no reference to any issues of waiver by
the Subcontractors or unconscionability. 
Accordingly, we decline to further address these issues as moot.  See Hanna, 876 S.W.2d at 457. 








Furthermore, we note that respondent made no
specific findings regarding the claims raised by the County alleging faulty
construction; the only Afactual finding@ regarding security problems in the order was the
following statement: AIt is undisputed that there have been various escape
attempts from the Detention Center, including one escape attempt in early 2004,
involving inmates who penetrated the hollow cinder-block walls of the Detention
Center.@  All other
references to security problems were clearly denoted to be allegations of the
County, not factual findings.  

After a judgment of the trial court becomes final,
it can be altered through the entry of a nunc pro tunc judgment if the evidence
shows that a clerical error, rather than a judicial error, caused the
inaccuracy.  Tex. R. Civ. P.  316; Gutierrez
v. Elizondo, 139 S.W.3d 768, 771 (Tex. App.BCorpus
Christi 2004, no pet.).  A judicial error
is an error which occurs in the rendering, as opposed to the entering, of a
judgment.  Gutierrez, 139 S.W.3d
at 771.  A clerical error is one which,
after being corrected, does not change the terms of the judgment as
rendered.  See id.

If, as the Subcontractors appear to allege here, the
complained-of statement regarding prisoner escape attempts was not in fact an Aundisputed@ statement of fact, we see that this is nonetheless
no more than a clerical error as its removal or correction would not change or
affect the terms of the judgment as rendered. 
Therefore, as the proper remedy for the Subcontractors is to seek a
judgment nunc pro tunc from the trial court, see id., or to establish in
the record that this statement was clearly erroneous, we will not address this
complaint. See Asberry v. State, 813 S.W.2d 526, 529 (Tex. App.BDallas 1991, pet. ref'd) (noting appellate courts have
power to correct clerical errors when evidence clearly showing error appears in
the record).  

Conclusion

We dismiss the interlocutory appeal in Cause No.
13-04-578-CV for lack of jurisdiction.








We conditionally grant the relief sought by the
Subcontractors in Cause No. 13-05-165-CV. 
Respondent is ordered to vacate his order of October 29, 2004, insofar
as it denies the Subcontractors= motion to compel arbitration.  A writ of mandamus will issue if respondent
refuses to comply with this Court's instructions.  

The stay of the underlying proceedings issued by
this Court is hereby set aside so that the parties may comply with this
opinion.

 

 

                 
                         

Rogelio Valdez,

Chief Justice

 

 

Opinion
delivered and filed

this
1st day of December, 2005.











[1]The Subcontractors, who are
appellants in Cause No. 13-04-578-CV and relators or real-parties-in-interest
in Cause No. 13-05-165-CV, are the following parties: AFG Industries, Inc.; Al
Cardenas Masonry and System Firealarm CCTV Central Systems; Buell Doors, d/b/a
Total Opening System; Cappadonna Electrical Management; Coastal Engineering;
Commercial Roofing Systems; Cornerstone Detention Products; CTO, Inc.; Di
Stefano/Santopetero Architects, Inc.; Durrant Architect, Inc.; Eberle
Materials; J-III Concrete Company, Inc.; L&G Concrete; Lyon Metal Products;
MacLaird Glass Company; Metro Electric; Pearland Industries, Inc.; Raba-Kistner
Consultants; Rio Grande Steel, Ltd.; Strategis Equipment/Gernsbacher;  Thirlwall Sheet Metal Company; Toft/Wolff/Farrow,
Inc.; Toman & Associates; Tri-City Steel and Fabrication, Inc.; and Zarate
Suspended Ceilings, Inc.





[2]One of the Subcontractors,
Cappadonna, informed this Court by letter dated August 22, 2005, that Landmark
and Cameron County settled their claims during arbitration.  However, as Cappadonna noted in its letter,
this did not moot the interlocutory appeal or original proceeding filed by the
Subcontractors.  The Subcontractors could
still seek to compel Cameron County to enter arbitration proceedings without
Landmark=s presence.  





[3]The general contract also provides
the following:

 

[Landmark] and [Cameron County] expressly agree that any
arbitration pursuant to this Section 10.3 may be joined or consolidated with
any arbitration involving any other person or entity (i) necessary to resolve
the claim, dispute or controversy, or (ii) substantially involved in or
affected by such claim, dispute or controversy. 
Both [Landmark] and [Cameron County] will include appropriate provisions
in all contracts they execute with other parties in connection with the Project
to require such joinder or consolidation.

 

The Subcontractors argue that this
is a clear indication that Cameron County expressly intended to incorporate
other arbitration agreements between Landmark and any subcontractors.  We disagree. 
Under this provision, the Subcontractors could initiate arbitration
proceedings against Landmark and Landmark could then potentially join that
arbitration with its separate arbitration proceedings against Cameron
County.  However, this only makes the
Subcontractors and Cameron County able to assert any claims they both have
against Landmark in a single proceeding; it does not itself provide a means for
the Subcontractors to arbitrate their claims against Cameron County
directly.  The provision is a joinder or
consolidation provision only and does not indicate that any interested third-party
can attempt to harness the arbitration clause in the Cameron County-Landmark
contract in order to pursue its own claims in arbitration.

 





[4]In its In re Weekley Homes
opinion, the supreme court reached the same conclusion under similar
circumstances:  

 

Like the equitable doctrine of
promissory estoppel, we do not understand direct‑benefits estoppel to
create liability for noncontracting parties that does not otherwise exist. As
Von Bargen and Weekley had no contract between them, estoppel alone cannot grant
either a right to sue for breach. Nor do we understand the doctrine to apply
when the benefits alleged are insubstantial or indirect. But once Von Bargen
deliberately sought substantial and direct benefits from the contract, and
Weekley agreed to comply, equity prevents her from avoiding the arbitration
clause that was part of that agreement. 

 

In re Weekley Homes, No. 04-0119, 2005 Tex. LEXIS 817, at *19, 49 Tex.
Sup. J. 55  (Oct. 28, 2004, orig.
proceeding).