NUMBERS 13-06-328-CV and 13-06-411-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

NEATHERLIN HOMES, INC., WALTER INDUSTRIES, INC. 

AND TRACEY SMELLEY, Appellants,


v.
 


MARI LOVE, Appellee.

 


On appeal from the 335th District Court of Lee County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Vela


Memorandum Opinion by Chief Justice Valdez


 

 Neatherlin Homes, Inc., Walter Industries, Inc., and Tracey Smelley ("Neatherlin") (1)
have filed a petition for writ of mandamus, docketed as Cause No. 13-06-411-CV, and an
interlocutory appeal, docketed as Cause No. 13-06-328-CV, challenging the trial court's
refusal to compel arbitration of claims brought against Neatherlin by Mari Love. (2)
 Neatherlin
seeks to compel arbitration under both the Federal Arbitration Act ("FAA") and the Texas
General Arbitration Act ("TGAA"). 

 Neatherlin's pursuit of parallel proceedings before this Court is appropriate. See
Serv. Corp. Int'l v. Lopez, 162 S.W.3d 801, 806 (Tex. App.-Corpus Christi 2005, orig.
proceeding). We dismiss the interlocutory appeal and conditionally grant the petition for
writ of mandamus as specified herein.

I. Background


 Love brought suit against Neatherlin for breach of contract, fraud, unconscionable
conduct, and intentional infliction of emotional distress in connection with her purchase of
a home to be constructed by Neatherlin. Love's complaints center around the home's
allegedly defective foundation. In connection with her purchase of the home, Love
executed a retail installment contract which included the following written arbitration
agreement:

 Buyer(s) and Seller agree that any controversy or claim arising out of or
relating to this contract, or the breach thereof, whether asserted as in tort or
contract, or as a federal or state statutory claim, arising before, during or
after performance of this contract, shall be settled by binding arbitration in
accordance with the Construction Industry Arbitration Rules of the American
Arbitration Association, and judgment upon the award rendered by the
arbitrator may be entered in any Court having jurisdiction thereof. The
parties agree and understand that they choose arbitration instead of litigation
to resolve disputes. Any action regardless of form, arising out of the contract
must be brought by Buyer(s) within two (2) years of the date the cause of
action occurs. The parties agree that each party may take the deposition of
two (2) persons whether they are both opposing party members or two (2)
individuals under the control of the opposing Party, or a combination thereof. 
The cost of such arbitration shall be divided equally among the parties to the
arbitration. Each party shall bear the cost of their own expenses and
attorney's fees. The number of arbitrators shall be one.


 Notwithstanding the foregoing, Seller and its assigns, retain the option to use
judicial or non-judicial relief to seek (i) such remedies as foreclosure and
ejectment granted to Seller or its successors and assigns in the Mortgage,
(ii) suits to quiet title to any Property covered by the Mechanic's Lien
Contract or Deed of Trust, (iii) suits to establish equitable liens, and (iv) suits
to collect any sums due and owing under the Retail Installment Contract,
Mechanic's Lien Contract or Deed of Trust. The institution and maintenance
of an action for judicial relief in a court to seek the remedies of foreclosure
and ejectment, to establish quiet title and equitable liens, or to collect any
sums due and owing under the Retail Installment Contract, Mechanic's Lien
Contract and/or Deed of Trust shall not constitute a waiver of the right of any
party to compel arbitration regarding any other dispute or remedy subject to
arbitration in this contract, including the filing of a counterclaim in a suit
brought by Seller, or its assigns, pursuant to this provision.


 Buyer(s) acknowledge that Seller is a Texas corporation with its principal
place of business in the State of Texas. The parties acknowledge that some
or all of the materials, fixtures, and equipment, as well as the source of
financing contemplated by this contact, will be purchased, received, or have
their origin from outside the state when [sic] this contract is entered into.


This agreement was signed by a representative for Neatherlin and by Love. The trial court
denied Neatherlin's motion to compel arbitration on May 4, 2006. Neatherlin contends that
the trial court erred in refusing to compel arbitration. 

II. Mandamus or Appeal


 Our first task is to determine which arbitration act applies to this case. See id. The
FAA "applies to all suits in state or federal court when the dispute concerns 'a contract
evidencing a transaction involving commerce.'" Jack B. Anglin Co., Inc. v. Tipps, 842
S.W.2d 266, 269-70 (Tex. 1992) (orig. proceeding) (quoting 9 U.S.C.S. § 2 (2000)); In re
Profanchik, 31 S.W.3d 381, 384 (Tex. App.-Corpus Christi 2000, orig. proceeding). The
United States Supreme Court has held that the word "involving" in the FAA is broad and
the functional equivalent of "affecting," signaling Congress's intent to exercise its
Commerce Clause powers to the fullest. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S.
265, 268 (1995); L&L Kempwood Assocs., L.L.P., v. Omega Builders, Inc., 9 S.W.3d 125,
127 (Tex. 1999) (orig. proceeding) (per curiam). The transaction must "in fact" involve
interstate commerce. Allied-Bruce Terminix, 513 U.S. at 281. The FAA does not require
a substantial effect on interstate commerce; rather, it requires only that commerce be
involved or affected. L&L Kempwood Assocs., 9 S.W.3d at 127. A party who alleges
interstate commerce may show it in several ways: (1) location of headquarters in another
state, (2) transportation of materials across state lines, (3) manufacture of parts in a
different state, (4) billings prepared out of state, and (5) interstate mail and phone calls in
support of a contract. See Stewart Title Guar. Co. v. Mack, 945 S.W.2d 330, 333 (Tex.
App.-Houston [1st Dist.] 1997, orig. proceeding); see also Anglin, 842 S.W.2d at 270.
When, as here, there is no express agreement to arbitrate under the FAA, the question of
whether the parties' transaction affects interstate commerce is one of fact. In re
Profanchik, 31 S.W.3d at 384.

 Love contends that Neatherlin failed to supply any evidence to support the "mere
blanket assertion or conclusion that materials came from other states." She asserts that
there is no evidence and insufficient evidence to prove that this transaction "in fact"
involves interstate commerce. 

 The arbitration agreement provides that "some or all of the materials, fixtures, and
equipment, as well as the source of financing contemplated by this contract, will be
purchased, received or have their origin from sources outside the state [where] this
contract is entered into." According to the affidavits of James Branson, sales manager for
Neatherlin Homes, and Jean Baker, a salesperson for Neatherlin Homes, some of the
materials used in constructing the house came from outside the state of Texas, as did
financing for the purchase or construction of the house. Love offered no evidence to the
contrary. Accordingly, we conclude that Neatherlin met its burden to show that the
arbitration agreement is governed by the FAA. 

III. Standard of Review


 A writ of mandamus will issue to correct a clear abuse of discretion when there is
no adequate remedy by appeal. See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).
A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as
to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or
apply the law. In re Ford Motor Co., 165 S.W.3d 315, 317 (Tex. 2005). The relator has
the burden to establish that the trial court abused its discretion. See id. If a trial court
erroneously denies a party's motion to compel arbitration under the FAA, the movant has
no adequate remedy at law and is entitled to a writ of mandamus. In re Nexion Health at
Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005); Serv. Corp. Int'l, 162 S.W.3d at 808.

IV. Validity of the Arbitration Agreement


 A party seeking to compel arbitration by a writ of mandamus must (1) establish the
existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in
dispute are within the scope of the agreement. In re Kellogg Brown & Root, Inc., 166
S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement
exists is a legal question subject to de novo review." In re D. Wilson Constr. Co., 196
S.W.3d 774, 781 (Tex. 2006). In determining the validity of agreements to arbitrate which
are subject to the FAA, we generally apply state-law principles governing the formation of
contracts. In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex. 2006) (citing First
Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). If the trial court finds there
is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove
his defenses. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003). 

 Once a valid agreement to arbitrate has been established, the court must then
determine whether the arbitration agreement covers the nonmovants' claims. In re
FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001). To determine whether an existing
arbitration agreement covers a party's claims, a court must "focus on the complaint's
factual allegations rather than the legal causes of action asserted." Id. at 754. Federal
policy embodied in the FAA favors agreements to arbitrate and courts must resolve any
doubts about an arbitration agreement's scope in favor of arbitration. Id. at 753. If the
arbitration agreement encompasses the claims and the party opposing arbitration has
failed to prove its defenses, the trial court has no discretion but to compel arbitration and
stay its own proceedings. Id. at 753-54; D.R. Horton, Inc. v. Brooks, 207 S.W.3d 862, 866-67 (Tex. App.-Houston [14th Dist.] 2006, no pet.); Feldman/Matz Interests, L.L.P. v.
Settlement Capital Corp., 140 S.W.3d 879, 883 (Tex. App.-Houston [14th Dist.] 2004, no
pet.).

V. Agreement to Arbitrate


 The retail installment contract at issue included an arbitration agreement. Love
executed the contract and signed the agreement. As part of the agreement, Love agreed
to settle "any controversy or claim arising out of or relating to this contract, or the breach
thereof, whether asserted as in tort or contract, or as a federal or state statutory claim,
arising before, during or after performance of this contract," by arbitration. Love's
arguments below and on appeal do not deny the existence of this agreement. Accordingly,
we conclude that Neatherlin has established the existence of a valid arbitration agreement.

VI. Scope of the Agreement


 We further conclude that the arbitration agreement covers Love's claims against
Neatherlin. In the instant case, all of Love's claims relate to the allegedly defective
construction of the home subject to the retail installment contract, and accordingly fall
within the scope of the broad arbitration clause that she signed. In this regard, we would
note that courts recognize the use of "any" dispute "arising out of or relating to" as broad
language that expressly includes tort and other claims relating to the contractual
relationship. See In re Jim Walter Homes, Inc., 207 S.W.3d 888, 895 (Tex. App.-Houston
[14th Dist.] 2006, orig. proceeding); Dewey v. Wegner, 138 S.W.3d 591, 601 & n.20 (Tex.
App.-Houston [14th Dist.] 2004, orig. proceeding). 

VII. Nonsignatories


 The initial burden of establishing the existence of an arbitration agreement includes
proving that the party seeking to enforce the agreement was a party to the agreement or
otherwise had the right to enforce it. Merrill Lynch Trust Co. FSB v. Alaniz, 159 S.W.3d
162, 167-68 (Tex. App.-Corpus Christi 2004, no pet.); Mohamed v. Auto Nation USA
Corp., 89 S.W.3d 830, 836 (Tex. App.-Houston [1st Dist.] 2002, orig. proceeding). 

 In the instant case, the arbitration agreement was signed by Neatherlin Homes,
Inc., as the builder of the home. Love contends that she should not be forced to arbitrate
her claims with Walter Industries, Inc. and Tracey Smelley, neither of whom signed the
arbitration agreement. Walter Industries, Inc. was the parent company of Neatherlin
Homes, Inc., and Tracey Smelley was a foundation subcontractor hired by Neatherlin
Homes, Inc. to construct the slab foundation of the house.

 Under certain circumstances, a party to an arbitration agreement may be compelled
to arbitrate claims with a nonparty if the controversy arises from a contract containing an
arbitration clause. Meyer v. WMCO-GP LLC, 50 Tex. Sup. Ct. J. 264, 2006 Tex. LEXIS
1299, *6 (Dec. 26, 2006); In re Palm Harbor Homes, Inc., 195 S.W.3d at 678; see In re
Vesta Ins. Group, Inc., 192 S.W.3d 759, 760 (Tex. 2006) (per curiam); In re Weekley
Homes, L.P., 180 S.W.3d 127, 130 (Tex. 2005); In re Kellogg Brown & Root, Inc., 166
S.W.3d at 738-39; see also Merrill Lynch Trust Co. FSB, 159 S.W.3d at 168 ("A party that
is not a signatory to an arbitration agreement may enforce it if the party falls into a
recognized exception under general equitable or contract law that would allow such
enforcement."). The terms under which a nonsignatory can compel a party who has signed
an arbitration agreement to arbitrate a dispute is described in the seminal case of Grigson
v. Creative Artists Agency, 210 F.3d 524 (5th Cir. 2000): 

 Existing case law demonstrates that equitable estoppel allows a
nonsignatory to compel arbitration in two different circumstances. First,
equitable estoppel applies when the signatory to a written agreement
containing an arbitration clause must rely on the terms of the written
agreement in asserting its claims against the nonsignatory. When each of a
signatory's claims against a nonsignatory makes reference to or presumes
the existence of the written agreement, the signatory's claims arise out of
and relate directly to the written agreement, and arbitration is appropriate.
Second, application of equitable estoppel is warranted when the signatory
to the contract containing an arbitration clause raises allegations of
substantially interdependent and concerted misconduct by both the
nonsignatory and one or more of the signatories to the contract. Otherwise
the arbitration proceedings between the two signatories would be rendered
meaningless and the federal policy in favor of arbitration effectively thwarted. 


Id. at 527 (quoting M S Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999))
(internal citations and quotation marks omitted)) (added emphasis omitted); see Meyer,
2006 Tex. LEXIS 1299, *6-*7. 

 In the instant case, Love must rely on the terms of the retail installment agreement
in asserting her claims against Walter Industries, Inc. and Tracey Smelley. Grigson, 210
F.2d at 527. Moreover, Love brought the same causes of action against each of these
parties and alleged concerted, coordinated acts by these parties, and all of Love's causes
of action arise from the same operative facts concerning the allegedly defective
construction of her home. See Brown v. Anderson, 102 S.W.3d 245, 250 (Tex.
App.-Beaumont 2003, pet. denied) (finding substantially interdependent and concerted
misconduct where the causes of action against the non-signatory defendants are "based
upon the same operative facts and are inherently inseparable from the causes of action
against the signatory-defendant"). Accordingly, Love, as a signatory to the arbitration
agreement, has raised allegations of "substantially interdependent and concerted
misconduct" by both Walter Industries, Inc., and Tracey Smelley, as nonsignatories to the
agreement, and Neatherlin, a signatory to the contract. See id.

 We conclude the trial court abused its discretion in failing to compel Love, as a
signatory, and Walter Industries, Inc., and Tracey Smelley, as nonsignatories, to arbitrate
their dispute arising out of the installment contract with Neatherlin. Grigson, 210 F.2d at
527; see Meyer, 2006 Tex. LEXIS 1299, *6-*7. 

VIII. Defenses


 Neatherlin has proved the existence of a valid arbitration agreement and a dispute
falling within the scope of the agreement. In re Kellogg Brown & Root, Inc., 166 S.W.3d
at 737. Accordingly, we next consider whether Love has carried her burden of proof
regarding her defenses to the arbitration agreement. J. M. Davidson, Inc., 128 S.W.3d at
227.

A. Meeting of the Minds


 Love contends that there is no or insufficient evidence to support a finding that the
parties had a meeting of the minds on the essential elements of the agreement to arbitrate. 
By affidavit, Love testified that "they hid from me the fact that I was agreeing to arbitration 
and giving up my right to a jury trial." Further, "I would not ever have entered into or signed
such a contract and I would not ever have dealt with such people or businesses if I had
known the truth." Love does not dispute signing the arbitration agreement as part of the
process by which she executed the contract for the construction and sale of the residence
at issue. 

 Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the
contract he signed, regardless of whether he read it or thought it had different terms. In
re McKinney, 167 S.W.3d 833, 835 (Tex. 2005); EZ Pawn Corp. v. Mancias, 934 S.W.2d
87, 90 (Tex. 1996). Therefore, Love's argument that she did not understand the contract
does not negate her acceptance of the contract terms. When parties enter into an
agreement based on a writing that is not ambiguous, the court will give effect to the parties'
intention as expressed in the writing. In re McKinney, 167 S.W.3d at 835; Sun Oil Co. v.
Madeley, 626 S.W.2d 726, 731 (Tex. 1981). Considering these undisputed facts, the only
decision that the trial court could have reasonably reached was that Love, by signing the
agreement, had consented to arbitrate future disputes. 

B. Mutuality and Consideration


 Love also contends that the agreement lacks mutuality and consideration. Love
argues that she gave up significant rights and remedies under the law without receiving
anything in return. A contract must be based upon a valid consideration, in other words,
"mutuality of obligation." Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 408 (Tex. 1997);
Labor Ready Cent. III, L.P. v. Gonzalez, 64 S.W.3d 519, 522 (Tex. App.-Corpus Christi
2001, no pet.).

 Arbitration agreements, like other contracts, must be supported by consideration. 
See In re Palm Harbor Homes, Inc., 195 S.W.3d at 676-77; In re Advance PCS Health
L.P., 172 S.W.3d 603, 607 (Tex. 2005) (per curiam); In re Halliburton Co., 80 S.W.3d 566,
569-70 (Tex. 2002). Such consideration may take the form of bilateral promises to
arbitrate. See In re Advance PCS, 172 S.W.3d at 607. When an arbitration clause is part
of a larger, underlying contract, the remainder of the contract may provide consideration
for the arbitration clause. Id.; see also In re FirstMerit Bank, N.A., 52 S.W.3d at 757. 

 The arbitration agreement was part of a retail installment contract executed by Love
and Neatherlin regarding the purchase and construction of a house. The underlying
contract between Love and Neatherlin constituted valid consideration for the arbitration
agreement as between them, as did their mutual promises to arbitrate. See In re Palm
Harbor Homes, Inc., 195 S.W.3d at 676-77; In re Advance PCS, 172 S.W.3d at 607. The
agreement's provision allowing Neatherlin to retain the option to use judicial or non-judicial
relief in certain circumstances did not make either the consideration for the underlying
contract, or the promises to arbitrate any disagreements, illusory. In re Palm Harbor
Homes, Inc., 195 S.W.3d at 676-77.

C. Unconscionability


 Love also challenges the arbitration agreement as being procedurally and
substantively unconscionable. Love argues that the trial court could reasonably have
inferred from all the circumstances reflected in the record that Love was at a commercial
disadvantage in her contractual negotiations with Neatherlin, and that, because of the
disparity in their bargaining power, Love was not afforded any meaningful opportunity to
negotiate a fair and mutually binding provision addressing remedies for a potential default. 
In terms of procedural unconscionability, Love contends that the trial court could have
decided that Love had no reasonable opportunity to negotiate an alternative to the
arbitration provision. In terms of substantive unconscionability, Love contends that the
agreement is so one-sided that it would be unconscionable to enforce the agreement under
the circumstances existing at the time of its execution. 

 Substantive unconscionablity refers to the fairness of the arbitration provision itself,
whereas procedural unconscionability refers to the circumstances surrounding adoption
of the arbitration provision. In re Palm Harbor Homes, Inc., 195 S.W.3d at 677. Claims
of procedural and substantive unconscionability are properly considered by courts in
determining the validity of an arbitration provision. Id.

1. Substantive Unconscionability


 The test for substantive unconscionability is whether, "given the parties' general
commercial background and the commercial needs of the particular trade or case, the
clause involved is so one-sided that it is unconscionable under the circumstances existing
when the parties made the contract." In re FirstMerit Bank, 52 S.W.3d at 757; see In re
Palm Harbor Homes, Inc., 195 S.W.3d at 677. There is nothing inherently unconscionable
about arbitration agreements. In re Palm Harbor Homes, Inc., 195 S.W.3d at 677; In re
Advance PCS, 172 S.W.3d at 608.

 Love contends that the agreement is substantively unconscionable because it is a
contract of adhesion, that is, she was required to execute the document in order to
purchase the home. This does not, in and of itself, make the agreement substantively
unconscionable. See In re Palm Harbor Homes, Inc., 195 S.W.3d at 677; In re Advance
PCS, 172 S.W.3d at 608. Moreover, assuming arguendo that the agreement constituted
a contract of adhesion, the Texas Supreme Court has held that adhesion contracts are not
per se unconscionable or void. In re Advance PCS, 172 S.W.3d at 608. We conclude that
the record does not support Love's claim of substantive unconscionability.

2. Procedural Unconscionability


 Love also argues that the agreement is procedurally unconscionable. By affidavit,
Love testified that she did not voluntarily waive her right to a jury trial and that she is a
"single woman" without training or experience in contracts or construction. Love complains,
generally, that her bargaining position was unfair. 

 Love's assertions fail to establish procedural unconscionability as to adoption of the
arbitration agreement. In re Palm Harbor Homes, Inc., 195 S.W.3d at 679 . The principles
of unconscionability do not negate a bargain because one party to the agreement may
have been in a less advantageous bargaining position. Id. Unconscionablity principles
are applied to prevent unfair surprise or oppression. See In re FirstMerit Bank, 52 S.W.3d
at 757. Based on the evidence before the Court, we find neither unfair surprise nor
oppression in the arbitration agreement. Accordingly, we disagree with Love's contention
that the agreement was procedurally unconscionable.

D. Waiver


 Love argues that Neatherlin waived any right to arbitrate by delaying its motion to
compel arbitration and propounding "extensive" discovery that she was forced to answer,
"rather than seek arbitration where such discovery would not have been available." She
contends that she has been substantially harmed by the unexplained delay because she
has been forced to live "with no running water, no toilet, no shower, no heating, and no air
conditioning." Love further asserts that she has suffered the expense of retaining an
attorney and the expense of retaining an expert and procuring expert reports. 

 There is a strong presumption against waiver under the FAA. In re D. Wilson
Constr. Co., 196 S.W.3d at 783; see In re Vesta Ins. Group, Inc., 192 S.W.3d at 763. A
"heavy burden of proof" is required to establish waiver of arbitration rights, and the court
must resolve all doubt in favor of arbitration. In re Bruce Terminix Co., 988 S.W.2d 702,
702 (Tex. 1998). Waiver occurs only where "a party has acted inconsistently with its right
to arbitrate and such actions prejudiced the other party." In re Oakwood Homes, 987
S.W.2d 571, 574 (Tex. 1999). Waiver of an arbitration right must be intentional. EZ Pawn
Corp., 934 S.W.2d at 89; In re Certain Underwriters at Lloyd's, 18 S.W.3d 867, 872 (Tex.
App.-Beaumont 2000, orig. proceeding). 

 Merely taking part in litigation is not enough unless a party "has substantially
invoked the judicial process to its opponent's detriment." In re Vesta, 192 S.W.3d at 763
(quoting In re Serv. Corp. Int'l, 85 S.W.3d 171, 174 (Tex. 2002)). To substantially invoke
the judicial process, a party must make a specific and deliberate act after suit has been
filed that is inconsistent with its right to arbitrate. Sedillo v. Campbell, 5 S.W.3d 824, 827
(Tex. App.-Houston [14th Dist. 1999, no pet.); Nationwide of Bryan v. Dyer, 969 S.W.2d
518, 521 (Tex. App.-Austin 1998, no pet.). Actions that raise the issue of waiver may
include some combination of filing an answer, setting up a counterclaim, pursuing
extensive discovery, moving for a continuance, and failing to timely request arbitration. See
In re Certain Underwriters at Lloyd's, 18 S.W.3d at 872-73; Sedillo, 5 S.W.3d at 827;
Central Nat'l Ins. Co. v. Lerner, 856 S.W.2d 492, 494 (Tex. App.-Houston [1st Dist.] 1993,
orig. proceeding). The question of waiver depends on the individual circumstances of
each case. Sedillo, 5 S.W.3d at 827. Delay alone generally does not establish waiver. 
In re Vesta, 192 S.W.3d at 763. 

 In the instant case, Love's attorney sent a written complaint to Neatherlin about the
construction of the house in March 2003. In April 2003, Neatherlin attempted to resolve
her complaints through inspection and an offer to settle pursuant to the Texas Residential
Construction Liability Act. See Tex. Prop. Code Ann. §§ 27.001 -27.007 (Vernon 200 &
Supp. 2006). Attempts to resolve the case failed. 

 Love filed suit on August 10, 2004. Neatherlin answered and moved to compel
arbitration on September 3, 2004. With its answer and motion to compel, Neatherlin
served requests for disclosure, requests for admissions, requests for production, and
interrogatories on Love. Love responded to the thirty requests for admission only.

 Neatherlin filed a supplement to the motion to compel arbitration on October 8,
2004. Neatherlin set a hearing on the motion to compel for December 10, 2004, at the
same time as a hearing sought by Love for a temporary injunction. The parties passed that
hearing by agreement. Neatherlin's counsel passed away on January 24, 2005. 
Neatherlin renewed attempts to resolve the case. 

 Neatherlin set another hearing on the motion to compel on July 8, 2005. Love
requested that the hearing on the motion to compel arbitration be reset. Neatherlin sent
Love's counsel letters regarding settlement and a new hearing date for the motion to
compel arbitration on July 7, 2005, September 8, 2005, and November 10, 2005. On
November 17, 2005, Neatherlin notified Love's counsel of the hearing date. The trial court
heard the motion to compel arbitration on December 16, 2005, following which the trial
court referred the parties to mediation. The trial court again heard the motion to compel
arbitration on April 7, 2006. On May 4, 2006, the trial court denied the motion to compel
arbitration. 

 Given the applicable burden of proof, Love has not shown that Neatherlin
substantially invoked the judicial process to her detriment. See, e.g., In re Vesta Ins.
Group, Inc., 192 S.W.3d at 764 (finding no substantial invocation of the judicial process to
opponent's detriment where litigation went on for two years because the relators engaged
in minimal discovery and the real party in interest failed to demonstrate sufficient prejudice
to overcome the strong presumption against waiver); EZ Pawn Corp., 934 S.W.2d at 91
(finding no substantial invocation of the judicial process to opponent's detriment where the
movant answered the suit, participated in a court-ordered telephone docket control
conference, conducted discovery, and entered into an agreed order resetting the case for
a later trial date). The discovery sent was minimal, no depositions have taken place, and
Neatherlin has not filed any dispositive motions. 

 In terms of Love's allegations regarding Neatherlin's attempts to settle her claim as
evidencing waiver of the right to compel arbitration, we would note that attempts at
settlement are not inconsistent with an inclination to arbitrate and do not preclude the
exercise of a right to arbitration. In re Certain Underwriters at Lloyd's, 18 S.W.3d at 876
(citing Walker v. J. C. Bradford & Co., 938 F.2d 575, 578 (5th Cir. 1991)); D. Wilson Constr.
Co. v. McAllen Indep. Sch. Dist., 848 S.W.2d 226, 230 (Tex. App.-Corpus Christi 1992,
writ dism'd w.o.j.). Accordingly, Neatherlin was under no obligation to assert its right to
arbitration before Love filed suit. "Pre-litigation efforts to negotiate can never be viewed
as delay; to hold otherwise would undermine any efforts to resolve a dispute short of trial." 
Nationwide of Bryan, 969 S.W.2d at 521-22.

 Given the strong presumption against waiver, and resolving all doubts in favor of
arbitration, we conclude that Love failed to carry her "heavy burden of proof" to establish
a waiver of Neatherlin's arbitration rights. In re D. Wilson Constr. Co., 196 S.W.3d at 783;
In re Bruce Terminix Co., 988 S.W.2d at 702. We conclude that Neatherlin did not
substantially invoke the judicial process or otherwise act inconsistently with its right to
arbitrate.

IX. Conclusion


 We conclude the trial court abused its discretion in denying Neatherlin's motion to
compel arbitration. Accordingly, relators' petition for writ of mandamus in Cause No. 13-06-00411-CV is conditionally GRANTED. See Tex. R. App. P. 52.8(c); In re Oakwood
Mobile Homes, Inc., 987 S.W.2d at 574-75. The trial court is instructed to enter an order
abating the litigation and compelling arbitration. The writ of mandamus will issue only if the
trial court fails to comply with this opinion. The interlocutory appeal in Cause Number 13-06-00328-CV is dismissed. Any pending motions are dismissed as moot.


 ROGELIO VALDEZ,

 Chief Justice



Memorandum Opinion delivered and filed 

this the 8th day of March, 2007.

 

1. Neatherlin Homes, Inc. was the builder of the Mari Love's home; Walter Industries, Inc. was the
parent company of Neatherlin Homes, Inc.; and Tracey Smelley was a foundation subcontractor hired by
Neatherlin Homes, Inc. to construct the slab foundation of the house.
2. The underlying matter is docketed as Cause No. 12,709 in the 335th Judicial District Court of Lee
County, the Honorable Terry Flenniken presiding.